**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:20-cv-22423-UU

SH GROUP GLOBAL IP HOLDINGS, L.L.C.,

      Plaintiff,

v.

2399 COLLINS AVENUE CONDOMINIUM
ASSOCIATION, INC. and JOHN P. BOSTANY,

      Defendants

**PLAINTIFF SH GROUP GLOBAL IP HOLDINGS, L.L.C.'S**
**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**

**TABLE OF CONTENTS**

I.    INTRODUCTION.................................................................................................. 1

II.   FACTUAL BACKGROUND .............................................................................. 3

III.  LEGAL STANDARD ........................................................................................ 5

IV.   ARGUMENT ...................................................................................................... 6

      A.    The Motion as to the Claims Against the Association (Counts III and VI)
            Is Moot. ................................................................................................ 6

      B.    SH Group Properly Pleads Breach of Contract Claims (Counts I and II)
            Against Bostany. ................................................................................... 7

      C.    SH Group Properly Pleads Tortious Interference in a Business
            Relationship (Count III) Against the Association................................. 13

      D.    SH Group Properly Pleads a Claim for Trademark Infringement Under
            Florida Statute Section 495.001, *Et Seq.* (Count VI)........................... 15

      E.    SH Group Properly Pleads Claims for Trademark Infringement Under the
            Lanham Act (Counts IV and V) and Common Law (Count VII) Against
            Bostany. ............................................................................................... 17

V.    CONCLUSION ................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alhassid v. Bank of Am., N.A.*,
    60 F. Supp. 3d 1302 (S.D. Fla. 2014) ......................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................................5

*Babbit Elecs., Inc. v. Dynascan Corp.*,
    38 F.3d 1161 (11th Cir. 1994) ................................................................................................19

*Beck v. Lazard Freres & Co.*,
    175 F.3d 913 (11th Cir. 1999) ..............................................................................................7, 8

*Belen Jesuit Preparatory Sch., Inc. v. Sportswear, Inc.*,
    No. 1:15-CV-22194-UU, 2015 WL 12516608 (S.D. Fla. Sept. 23, 2015) (Ungaro, J.)..........17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................................5, 6

*Benson v. QBE Ins. Corp.*,
    61 F. Supp. 3d 1277 (S.D. Fla. 2014) .....................................................................................5

*BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*,
    706 F. App'x 521 (11th Cir. 2017) ........................................................................................11

*Border Collie Rescue, Inc. v. Ryan*,
    418 F. Supp. 2d 1330 (M.D. Fla. 2006) .................................................................................14

*Brain Pharma, LLC v. Scalini*,
    858 F. Supp. 2d 1349 (S.D. Fla. 2012) .................................................................................17

*Brisk v. City of Miami Beach, Fla.*,
    709 F. Supp. 1146 (S.D. Fla. 1989) .........................................................................................6

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*,
    931 F.2d 1472 (11th Cir. 1991) .............................................................................................19

*Crystal Entm't & Filmworks, Inc. v. Jurado*,
    643 F.3d 1313 (11th Cir. 2001) .............................................................................................17

*Custom Mfg. & Eng'g, Inc. v. Midway Serv., Inc.*,
    508 F.3d 641 (11th Cir. 2007) ...............................................................................................16

*DiMase v. Aquamar 176, Inc.*,
    835 So. 2d 1150 (Fla. 3d DCA 2002) ...................................................................................11

*Dipietro v. City of Hialeah*,
    424 F. Supp. 3d 1286 (S.D. Fla. 2020) (Altonaga, J.) ...........................................................6

*Edwards v. Prime Inc.*,
    602 F.3d 1276 (11th Cir. 2010) ............................................................................................5

*Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v. Sonoma Bay Cmty.*
    *Homeowners Ass'n, Inc.*,
    141 F. Supp. 3d 1321 (S.D. Fla. 2015) ..................................................................................9

*Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc.*,
    91 F. Supp. 3d 1265 (S.D. Fla. 2015) .................................................................................18

*Future Tech Int'l, Ltd. v. Tae II Media, Ltd.*,
    944 F. Supp. 1538 (S.D. Fla. 1996) ....................................................................................13

*Gift of Learning Found., Inc. v. TGC, Inc.*,
    329 F.3d 792 (11th Cir. 2003) ............................................................................................15

*Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*,
    485 F.3d 1233 (11th Cir. 2007) ..........................................................................................14

*Heron Dev. Corp. v. Vacation Tours, Inc.*,
    No. 16-20683-Civ., 2017 WL 5957743 (S.D. Fla. Nov. 30, 2017) .................................15, 16

*Hous. Opportunities Project for Excellence, Inc. v. Key Colony No. 4 Condo. Assoc., Inc.*,
    510 F. Supp. 2d 1003 (S.D. Fla. 2007) .............................................................................9, 19

*Interline Brands, Inc. v. Chartis Specialty Ins. Co.*,
    749 F.3d 962 (11th Cir. 2014) ............................................................................................12

*Investacorp, Inc. v. Arabian Inv. Banking Corp.*,
    931 F.2d 1519 (11th Cir. 1991) ................................................................................15, 16, 18

*Lee v. Amex Assurance Co.*,
    No. 1:16-cv-21087-UU, 2016 WL 8677915 (S.D. Fla. June 3, 2016) (Ungaro, J.) ...............11

*Managed Care Sols., Inc. v. Cmty. Health Sys., Inc.*,
    No. 10-60170-Civ., 2011 WL 6024572 (S.D. Fla. Dec. 2, 2011).........................................11

*Marco's Franchising, LLC v. Marco's Italian Express, Inc.*,
    No. 8:06–cv–00670–T–17–TGW, 2007 WL 2028845 (M.D. Fla. July 9, 2007) ...................16

*Pediatric Nephrology Assocs. of S. Fla. v. Variety Children's Hosp.*,
    226 F. Supp. 3d 1346 (S.D. Fla. 2016) (Ungaro, J.).............................................................13

*Perlow v. Goldberg*,
    700 So. 2d 148 (Fla. 3d DCA 1997) ....................................................................10

*Planetary Motion, Inc. v. Techsplosion, Inc.*,
    261 F.3d 1188 (11th Cir. 2001) .........................................................................16

*Randall v. Scott*,
    610 F.3d 701 (11th Cir. 2010) ...........................................................................5

*Rosado v. Cypress at Woodmont II Condo. Ass'n, Inc.*,
    No. 10-61503-Civ., 2011 WL 13269719 (S.D. Fla. Jan. 6, 2011) ...........................9

*Rudnick v. Sears, Roebuck & Co.*,
    358 F. Supp. 2d 1201 (S.D. Fla. 2005) .............................................................13

*Sabal Palm Condos. of Pine Island Ridge Ass'n, Inc. v. Fischer*,
    No. 12-60691-Civ., 2014 WL 988767 (S.D. Fla. Mar. 13, 2014) ...........................9

*Skrtich v. Thornton*,
    280 F.3d 1295 (11th Cir. 2002) .......................................................................6, 7

*Sonny Boy, L.L.C. v. Asnani*,
    879 So. 2d 25 (Fla. 5th DCA 2004) ..................................................................10

*Tally-Ho, Inc. v. Coast Community College District*,
    889 F.2d 1018 (11th Cir. 1989). ...................................................................16, 17

*Tana v. Dantanna's*,
    611 F. 3d 767 (11th Cir. 2010) .........................................................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..........................................................................................5

*Tello v. Grosfillex, Inc.*,
    No. 09-60399-Civ., 2009 WL 10699892 (S.D. Fla. July 2, 2009) (Ungaro, J.) ..................5, 6

*Torremar Condo. Ass'n, Inc. v. Great Am. Ins. Co.*,
    No. 15-60839-Civ., 2015 WL 11198246 (S.D. Fla. July 9, 2015) .........................11

*TracFone Wireless, Inc. v. Narula*,
    No. 07-22202-Civ., 2008 WL 11407177 (S.D. Fla. Jan. 10, 2008).........................19

*West v. Warden, Comm'r, Ala. Doc*,
    869 F.3d 1289 (11th Cir. 2017) .........................................................................5

*Whitley v. Royal Trails Prop. Owners' Ass'n, Inc.*,
    910 So. 2d 381 (Fla. 5th DCA 2005) ................................................................12

*Wholesale Stone, LLC v. Stone-Mart Marble & Travertine Grp. LLC,*
 No. 13-24342-Civ., 2014 WL 11906611 (S.D. Fla. Mar. 10, 2014) ......................................19

**Statutes**

15 U.S.C. § 1114 ...........................................................................................................3, 17

15 U.S.C. § 1125 ...........................................................................................................3, 17

Fla. Stat. § 495.001 ...........................................................................................................15

Fla. Stat. § 495.131 ....................................................................................................2, 15, 16

Fla. Stat. § 495.181 ...........................................................................................................15

Fla. Stat. § 617.0834 ................................................................................................8, 9, 10, 19

**Rules**

Fed. R. Civ. P. 8 ...............................................................................................................5, 6

Fed. R. Civ. P. 12 .....................................................................................................1, 5, 6, 11

Local Rule 7.1 .....................................................................................................................1

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1, Plaintiff SH Group Global IP Holdings, L.L.C. ("SH Group") hereby responds in opposition to the Motion to Dismiss ("Motion") of Defendants 2399 Collins Avenue Condominium Association, Inc. (the "Association") and John P. Bostany ("Bostany") (collectively, "Defendants") (D.E. 22 ("Mot.")), and respectfully requests that the Motion be denied.

## I.    INTRODUCTION

Through their Motion, Defendants attempt to ignore the clear allegations of the Complaint and case law in order to sidestep liability.  But there is nothing in Defendants' Motion that warrants the dismissal under Federal Rule of Civil Procedure 12(b)(6) of any of SH Group's claims.

*First*, as a threshold matter, Defendants' Motion as to Counts III (Tortious Interference in a Business Relationship) and VI (Florida State Trademark Infringement) is moot as to the Association.  Because the Association subsequently filed an Answer to all claims in the Complaint (D.E. 23 ("Answer")), the Motion as to the Association is deemed moot under applicable law.

*Second*, Bostany cannot avoid liability for his own actions, as the Complaint properly pleads his contractual breaches.  The Complaint details that Bostany signed multiple contracts that obligated him to not (1) use any trademark or trade name of SH Group for any purpose, or (2) interfere with or contest SH Group's trademarks or other intellectual property.  (D.E. 1 ("Compl.") ¶¶ 26–43.)  As the Complaint states, he breached those obligations by (1) using the marks 1 HOTELS and 1 HOMES in both his personal capacity and by causing the Association's infringing use, and (2) directing, controlling, and/or inducing the Association to attempt to register 1 HOMES with the United States Patent and Trademark Office ("USPTO") and to attempt to cancel the valuable trademark registrations of SH Group.  (*Id*. ¶¶ 44–57.)  The law is

1

clear that the mere fact that Bostany is the President of the Board of Directors of the Association does not excuse him from liability for his own contractual breaches.  Accordingly, Defendants' Motion as to Count I (Breach of the Purchase Agreement) and Count II (Breach of the Buyer's Acknowledgement) should be denied.

*Third*, Defendants' procedurally mooted arguments against the tortious interference claim against the Association are otherwise misplaced and wrong.  Despite Defendants' conclusory argument that the Complaint does not allege contractual breaches by Bostany or a business relationship between Bostany and SH Group, SH Group properly pleads each of the requisite elements of tortious interference against the Association.  (*Id*. ¶¶ 78–82.)  Under Florida law, a contractual breach (or even a valid contract) is not required for a tortious interference claim—a separate and independent tort which is not dependent on a contractual breach. Moreover, although not required for the tortious interference claim against the Association, SH Group also alleges breach of contract claims against Bostany.  (*Id*. ¶¶ 58–77.)  Defendants' Motion as to Count III of the Complaint (Tortious Interference of a Business Relationship) should thus be denied.

*Fourth*, Count VI for trademark infringement under Florida state law also should not be dismissed.  Contrary to Defendants' claim, Section 495.131 of the Florida Statutes does not require that SH Group own a Florida state trademark registration.  Rather, the Florida Trademark Act, as well as decisions by the Eleventh Circuit and lower courts reflect that a federal registration (which SH Group alleges it owns (*id*. ¶ 21)) satisfies the statute and that its protection is coextensive with the federal Lanham Act.  Accordingly, Defendants' Motion as to Count VI (Trademark Infringement Under Florida Statutes) of the Complaint should be denied.

***Fifth***, Defendants' Motion as to the federal and common law trademark infringement claims against Bostany also fails.  SH Group alleges that Bostany personally has used the 1 HOTELS and 1 HOMES marks, and thus has infringed SH Group's trademark rights.  (*Id.* ¶ 54.) SH Group also alleges that Bostany is liable for trademark infringement for the separate and independent reason that, as noted above, he directed, controlled, and/or induced the Association's infringement of SH Group's trademarks.  (*Id.* ¶¶ 4, 46–53.)  Thus, under Eleventh Circuit law, Bostany is personally liable, regardless of his role as the board president of a non-profit condominium association.  Accordingly, Defendants' Motion as to Count IV (Trademark Infringement Under 15 U.S.C. § 1114), Count V (False Designation of Origin Under 15 U.S.C. § 1125(a)), Count VII (Common Law Trademark Infringement), and Count VIII (Common Law Unfair Competition) of the Complaint as to Bostany should be denied.

## II.    FACTUAL BACKGROUND

SH Group alleges that this dispute arises from Defendants' calculated infringement of and interference with SH Group's trademarks.  (*Id.* ¶¶ 1–6.)  SH Group alleges that it is the operator of renowned hotel and condominium properties, including the 1 HOTEL & HOMES brand of hotels and residences, which includes the 1 Hotel & Homes South Beach property in Miami Beach, Florida.  (*Id.* ¶¶ 15–16, 33, 39.)  As reflected in the Complaint, SH Group is an affiliate of global private investment firm Starwood Capital Group, the force behind some of the most recognizable and innovative hotel brands in the world, such as Westin Hotels & Resorts, W Hotels, Sheraton, The St. Regis, and Le Méridien.  (*Id.* ¶ 15.)  SH Group alleges ownership of a broad family of valuable "1" trademarks, based on both common law rights and federal registrations (many of which are incontestable), related to its 1 HOTELS and 1 HOTEL & HOMES resort and residence properties.  (*Id.* ¶¶ 1, 19–21, Ex. A.)  The Complaint pleads that SH Group's trademarks include dozens of federal registrations that begin with and prominently

3

feature the term "1" and three registrations that also include the term "HOME(S)."  (*Id.*; *see also* D.E. 21 ("Joint Rep.") at 3 (stipulating to SH Group's ownership of federal registrations).)  SH Group also alleges that it has used, and owns trademark rights to, 1 HOMES.  (Compl. ¶¶ 1, 20.)

In 2014, in connection with purchasing a condominium at SH Group's 1 Hotel & Homes South Beach property, Bostany allegedly signed the Purchase Agreement and Buyer's Acknowledgement.  (*Id.* ¶¶ 26, 41.)  SH Group alleges that the Purchase Agreement incorporates by reference the Declaration of Condominium, Resort Covenants, and Prospectus (collectively, with the Buyer's Acknowledgement, the "Agreements").  (*Id.* ¶¶ 31–32, 35, 38.)  The Complaint also states that all condominium owners, like Bostany, are bound by the Agreements.  (*Id.* ¶¶ 3, 41.)  SH Group alleges that by signing the Agreements, Bostany agreed that: (1) neither he nor the Association had any right to any aspect of SH Group's intellectual property (*id.* ¶¶ 28–29, 39); (2) he had no right to use any trademark or trade name of SH Group for any purpose (*id.* ¶¶ 33, 36); and (3) he would not interfere with or contest SH Group's trademarks or other intellectual property (*id.* ¶ 42).

Despite these clear contractual obligations, SH Group alleges that Bostany caused the Association to use the mark 1 HOMES in connection with condominium management services and merchandise, to attempt to register 1 HOMES before the USPTO, and to attempt to cancel three of SH Group's trademark registrations related to its 1 HOTEL & HOMES brand.  (*Id.* ¶¶ 44–57.)  As reflected in the Complaint, Bostany also used the 1 HOTELS and 1 HOMES marks (including SH Group's 1 HOTELS logo) to publicly, misleadingly and falsely advertise himself

as being a board member or executive of SH Group.  (*Id.* ¶¶ 44, 54.)  SH Group also alleges that

Defendants have refused to cease their infringing and breaching behavior.[1]  (*Id.* ¶ 5, 47.)

## III.   LEGAL STANDARD

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "the Court

considers only the four corners of the complaint."  *Benson v. QBE Ins. Corp.*, 61 F. Supp. 3d

1277, 1279 (S.D. Fla. 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308,

322 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Edwards v. Prime Inc.*, 602

F.3d 1276, 1291 (11th Cir. 2010).  A court must "accept as true the facts as set forth in the

complaint and draw all reasonable inferences in the plaintiff's favor."  *West v. Warden, Comm'r,*

*Ala. Doc*, 869 F.3d 1289, 1296 (11th Cir. 2017) (quoting *Randall v. Scott*, 610 F.3d 701, 705

(11th Cir. 2010)) (internal quotation marks omitted).

In order to "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S.

at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Tello v. Grosfillex, Inc.*, No.

09-60399-Civ., 2009 WL 10699892, at *1 (S.D. Fla. July 2, 2009) (Ungaro, J.) (citing *Twombly*,

550 U.S. at 570).  Rule 8 of the Federal Rules of Civil Procedure does not require "detailed

factual allegations," but rather only requires "more than labels and conclusions" or a "formulaic

---

[1]   Defendants' statements in the "Background" section of the Motion regarding the cancellation
proceeding are entirely irrelevant to the Motion.  (Mot. at 1–2.)  Regardless, as the Complaint
states, SH Group promptly expressed its concerns regarding Defendants' infringement.
(Compl. ¶¶ 5, 47.)  Far from a "strike suit brought by Plaintiff in retaliation" for the
Association's subsequently filed cancellation petition (Mot. at 1), this suit seeks to address
Defendants' willful infringement and breaches, which SH Group has attempted to resolve
amicably but to no avail, as reflected in the Complaint (*e.g.*, Compl. ¶¶ 1–6).

recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  The Court decides

whether a complaint should survive a motion to dismiss based on a "liberal standard," and a

complaint may be facially plausible even where it imposes liability on the defendants in a

"conclusory fashion." *Tello*, 2009 WL 10699892, at *1.

## IV.   ARGUMENT

SH Group's Complaint easily meets the pleading standard required by Rule 8 and states

each claim for relief against Defendants.  For the reasons discussed below, each of Defendants'

arguments fails and the Court should deny the Motion outright.

### A.   The Motion as to the Claims Against the Association (Counts III and VI) Is Moot.

Defendants' Motion as to the claims against the Association should be deemed moot

because the Association filed an Answer to the Complaint as to such claims.  (*See generally*

Answer.)  As the Court has noted, "[a] motion to dismiss challenges the sufficiency of the

allegations within the complaint; an answer admits or denies those allegations and raises any

available affirmative defenses."  *Brisk v. City of Miami Beach, Fla.*, 709 F. Supp. 1146, 1147

(S.D. Fla. 1989); *see also Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002) (finding that

a 12(b) motion to dismiss "would have been inappropriate" where the answer was already filed);

Fed. R. Civ. P. 12(a)(4)(A) (stating where a Rule 12 motion is filed, a responsive pleading "must

be served within 14 days" after the court's decision on such motion).  Therefore, the filing of an

answer before the court has ruled on the defendant's Rule 12 motion renders such motion moot.

*Brisk*, 709 F. Supp. at 1147.

Here, subsequent to filing the Motion, the Association filed its Answer as to all claims,

including Counts III and VI.  (Answer ¶¶ 78–82, 99–107.)  Accordingly, the Motion as to the

Association is moot and should therefore be denied.  *See Dipietro v. City of Hialeah*, 424 F.

Supp. 3d 1286, 1290 n.2 (S.D. Fla. 2020) (Altonaga, J.) (quoting S*krtich*, 280 F.3d at 1306) (acknowledging that it would be inappropriate for a party that had filed a responsive pleading to also be party to a concurrently pending motion to dismiss).

**B.**     **SH Group Properly Pleads Breach of Contract Claims (Counts I and II) Against Bostany.**

As reflected in the Complaint, by executing the Agreements, Bostany agreed that: (1) neither he nor the Association had any right to any aspect of SH Group's intellectual property; (2) he had no right to use any trademark or trade name of SH Group for any purpose; and (3) he would not interfere with or contest SH Group's trademarks or other intellectual property. (Compl. ¶¶ 25–43.)  Defendants argue that the Complaint fails to "provide any allegation that may serve as a basis to hold Mr. Bostany personally liable for the actions taken by the Association or by Mr. Bostany in his role as President of the Association's Board of Directors." (Mot. at 4.)  Defendants' argument misstates, or Defendants misapprehend, the factual allegations contained in the Complaint as well as the relevant legal standards.

Contrary to Defendants' confused assertions, the Complaint properly pleads two claims for breach of contract against Bostany with respect to the Agreements: Count I as to the Purchase Agreement (and agreements incorporated by reference) and Count II as to the Buyer's Acknowledgement.  A breach of contract claim under Florida law requires three elements:  "(1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co.,* 175 F.3d 913, 914 (11th Cir. 1999) (*per curiam*).  In its Complaint, SH Group alleges (1) the existence and validity of the Agreements, to which Bostany is a party (Compl. ¶¶ 26–43, 59–65, 72–73); (2) the breach of the Agreements by Bostany, a party to the Agreements (*id.* ¶¶ 44–54, 66–67); and (3) damages to SH Group relating to Bostany's breach of the Agreements (*id.* ¶¶ 68, 76).

In the Motion, Defendants do not challenge the validity of the Agreements.  Bostany's breaches, SH Group alleges, were made in his individual capacity, by virtue of his own conduct. (*Id.* ¶¶ 66, 74.)  SH Group alleges that Bostany personally used the 1 HOTELS and 1 HOMES marks (*id.* ¶ 54), and that he directed, controlled, and/or induced the Association's infringement, filing of trademark applications (one of which Bostany himself signed), and attempt to cancel SH Group's trademark registrations (*id.* ¶¶ 44–53).  As the Complaint alleges, these actions are directly contrary to, and a material breach of, Bostany's obligations under the Purchase Agreement and agreements it incorporates by reference.  (*Id.* ¶¶ 26–40, 66–67.)  For instance, SH Group alleges that Bostany agreed that (1) neither he nor the Association "have any right, title or interest" to any "aspect of the Hotel Brand Intellectual Property"; and (2) he does not "have the right, license or ability . . . to use for any purpose . . . any trade name, trademark or service mark associated with the Hotel or the operator thereof." (*Id.* ¶¶ 28–29, 33, 36, 39.) Bostany's alleged actions also are directly contrary to, and thus SH Group properly pleads a material breach of, his obligations under the Buyer's Acknowledgement, which states that he "shall not interfere with or contest [SH Group's] rights in and to the Brand Trademarks." (*Id*. ¶¶ 41–43, 74–75.)  SH Group alleges that it has been damaged by these actions as Bostany's breaches have, for instance, impaired the value of SH Group's trademarks and the goodwill associated therewith and forced SH Group to incur the expense of defending its rights.  (*Id*. ¶¶ 68, 76.)  Thus, SH Group properly pleads breach of contract claims against Bostany under Florida law.  *See Beck,* 175 F.3d at 914.

Despite these clear allegations of Bostany's contractual breaches, Defendants contend that Bostany cannot be held personally liable because he is the Association's Board President. Defendants cite Section 617.0834 of the Florida Statutes as well as two cases, each of which are

inapplicable.  With respect to the statute, Section 617.0834, by its own explicit terms, immunizes

a condominium association board member in a narrow circumstance, when the member is sued

for "any statement, vote, decision, or failure to take an action, regarding organizational

management or policy by an officer."  § 617.0834(1), Fla. Stat.  Here, in contrast, SH Group

alleges that Bostany affirmatively breached his own contractual obligations owed to SH Group

and that his tortious acts against SH Group and willful infringement of its intellectual property

are distinct from his fiduciary duties relating to the "organizational management or policy" of the

Association.  (Compl. ¶¶ 3, 44, 46, 54, 57, 66, 74.)  Indeed, Florida federal courts have routinely

rejected Bostany's argument to the contrary and have expressly found that Section 617.0834

does not insulate board members or officers from liability for their own violations of federal

statutes and tortious conduct.  *See, e.g.*, *Hous. Opportunities Project for Excellence, Inc. v. Key

Colony No. 4 Condo. Assoc., Inc.*, 510 F. Supp. 2d 1003, 1013–14 (S.D. Fla. 2007) ("section

617.0834, a state statute, cannot be applied to bar Plaintiffs' federal cause of action"); *see also

Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v. Sonoma Bay Cmty. Homeowners Ass'n,

Inc.*, 141 F. Supp. 3d 1321, 1325 (S.D. Fla. 2015) (finding that "traditional common law

principles of vicarious liability apply to" tort claims arising from violations of federal statute,

and that aggrieved plaintiffs can assert claims against individual defendants who engaged in

affirmative tortious acts even if acting as agents for or at the command of a principal); *Sabal

Palm Condos. of Pine Island Ridge Ass'n, Inc. v. Fischer*, No. 12-60691-Civ., 2014 WL 988767,

at *4 (S.D. Fla. Mar. 13, 2014) ("§ 617.0834, a state statute, cannot bar a claim under the FHA, a

federal cause of action") (internal citation omitted); *Rosado v. Cypress at Woodmont II Condo.

Ass'n, Inc.*, No. 10-61503-Civ., 2011 WL 13269719, at *3 (S.D. Fla. Jan. 6, 2011).  Thus,

Bostany is not insulated from liability for his own affirmative acts—including his alleged

personal use of the 1 HOTELS and 1 HOMES marks and his direction, control and/or inducement of the Association's infringement and interference with SH Group's trademarks—simply because he is a board officer. Nor is SH Group required to plead that Bostany engaged in "fraud, criminal activity, self-dealing, unjust enrichment" or the like (Mot. at 5) as the statute simply does not apply to the allegations against Bostany in the well-pled causes of action in this case.

The two cases relied upon by Defendants are similarly inapposite and only confirm that Section 617.0834 does not apply here. (*Id.*, citing *Perlow v. Goldberg*, 700 So. 2d 148, 150 (Fla. 3d DCA 1997); *Sonny Boy, L.L.C. v. Asnani*, 879 So. 2d 25, 27–28 (Fla. 5th DCA 2004)). Both *Perlow* and *Sonny Boy* involved claims by condominium owners against individual board members for their alleged mismanagement of the respective condominium association's affairs. Those cases dealt with precisely the type of failure-to-properly-manage allegations that Section 617.0834 was designed to address, which are not at issue here. Indeed, *Perlow* noted that the statute is intended "to shield condominium association directors from individual liability in instances of negligent management." *Perlow*, 700 So. 2d at 150. Similarly, *Sonny Boy* dealt with allegations that the officer "failed to cause the condominium association to maintain and repair specifically alleged items of common elements." *Sonny Boy, L.L.C.*, 879 So. 2d at 27–28. Such allegations and claims are not present in this case. Rather, Counts I and II relate to Bostany's own contractual obligations to SH Group and affirmative breaches thereof.[2]

---

[2]   Defendants' assertion that Bostany's actions and contracts do not bind the Association and thus that Counts I and II should be dismissed is misplaced. (Mot. at 5.) Counts I and II are asserted as to Bostany only (Compl. ¶¶ 58–67); whether the Association is bound is irrelevant.

Finally, with respect to Count I (Breach of the Purchase Agreement), Defendants argue that even if Bostany could be held liable for his breaches, the claim substantively fails because "1 HOMES is not one of the trademarks [explicitly] identified" in the Purchase Agreement and agreements it incorporates by reference.  (Mot. at 7.)  As a preliminary matter, such a merits-based argument is wholly inappropriate on a Rule 12(b)(6) motion as courts do not consider issues of contract interpretation at the motion to dismiss stage.  *See, e.g.*, *BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521, 524 (11th Cir. 2017) ("It was improper for the district court to interpret the contract when considering the motion to dismiss."); *Lee v. Amex Assurance Co.*, No. 1:16-cv-21087-UU, 2016 WL 8677915, at *3 (S.D. Fla. June 3, 2016) (Ungaro, J.) (contractual ambiguities "hinge on factual determinations that the Court cannot resolve on a motion to dismiss"); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1312 (S.D. Fla. 2014) ("Contract interpretation is typically inappropriate at the motion to dismiss stage."); *Managed Care Sols., Inc. v. Cmty. Health Sys., Inc.*, No. 10-60170-Civ., 2011 WL 6024572, at *6 (S.D. Fla. Dec. 2, 2011) (finding that if a contract's terms are susceptible to multiple meanings, this issue "should be decided at the summary judgment stage and the motion to dismiss on this basis should be denied").  Defendants' citation to *DiMase v. Aquamar 176, Inc.*, 835 So. 2d 1150, 1155 (Fla. 3d DCA 2002) (Mot. at 7), is inapposite as it addressed a motion for summary judgment interpreting a contract, not a motion to dismiss.

Regardless, Defendants' narrow reading of the Purchase Agreement and related agreements is contrary to black-letter law regarding contract interpretation, as well as the contracts' plain terms and the allegations of the Complaint.  Under Florida law, a contract should be interpreted "consistent with reason, probability, and the practical aspect of the transaction between the parties."  *Torremar Condo. Ass'n, Inc. v. Great Am. Ins. Co.*, No. 15-60839-Civ.,

11

2015 WL 11198246, at *2 (S.D. Fla. July 9, 2015) (quoting *Whitley v. Royal Trails Prop. Owners' Ass'n, Inc.*, 910 So. 2d 381, 383 (Fla. 5th DCA 2005)); *see also Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 966 (11th Cir. 2014) (interpretation that is "consistent with reason and probability" should be adopted) (internal quotations and citation omitted).

Here, if the Court considers Defendants' improper merits argument, it should find that the only reasonable interpretation of the Purchase Agreement and related agreements is that Bostany broadly and generally agreed not to use or claim ownership to SH Group's 1 HOTEL & HOMES family of trademarks, which includes 1 HOMES, as the Complaint states. (Compl. ¶¶ 1, 20–21, 26–40.) As reflected in the Complaint, by signing the Purchase Agreement, Bostany agreed that neither he nor the Association had any right, title, ownership or interest in SH Group's 1 HOTEL & HOMES family of marks, and thus that he would not use or induce the Association to use or claim ownership of any trademark or service mark of SH Group. (*Id*. ¶¶ 28–29, 33, 36, 39, 69.) For instance, SH Group alleges that Bostany agreed that he would not "use for any purpose . . . any trade name, trademark or service mark associated with the Hotel or the operator thereof." (*Id*. ¶¶ 33, 36.) Similarly, the Complaint alleges that Bostany agreed that he would have "no right, title or interest in . . . the marks, logos, or other trademarks, service marks, trade names, symbols, emblems, logos, insignias, indicia of origin, slogans and designs used in connection with '1 Hotel' or '1 Hotel & Residences[.]'" (*Id*. ¶ 29.) SH Group alleges ownership of a broad family of "trademarks that contain the number '1,'" including use of and rights to 1 HOMES. (*Id*. ¶¶ 1, 20–21.) Thus, SH Group properly pleads that Bostany has breached his contractual obligations under the Purchase Agreement and incorporated agreements, pursuant to Count I. For the foregoing reasons, Defendants' Motion as to Counts I and II should be denied.

**C.     SH Group Properly Pleads Tortious Interference in a Business Relationship (Count III) Against the Association.**

Defendants' only argument to dismiss the tortious interference claim against the Association is that the Complaint fails to allege a breach of any agreement by Bostany or a business relationship between Bostany and SH Group.  (Mot. at 7–8.)  Defendants do not cite to case law or other support for this contention, and their arguments are contrary to both the factual allegations in the Complaint as well as the applicable law.

As this Court has recognized, "[u]nder Florida law, a plaintiff must establish the following five elements to state a claim for tortious interference with an advantageous business relationship: (1) the existence of a business relationship under which the claimant has rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship; (4) by a third party; and (5) damage to the claimant cause by the interference." *Pediatric Nephrology Assocs. of S. Fla. v. Variety Children's Hosp.*, 226 F. Supp. 3d 1346, 1357–58 (S.D. Fla. 2016) (Ungaro, J.) (citing *Rudnick v. Sears, Roebuck & Co.*, 358 F. Supp. 2d 1201 (S.D. Fla. 2005) (citing *Future Tech Int'l, Ltd. v. Tae II Media, Ltd.*, 944 F. Supp. 1538, 1569 (S.D. Fla. 1996)).  With regard to the first element, the Complaint alleges the existence of a business relationship between SH Group and Bostany because Bostany owns a unit at SH Group's 1 Hotel & Homes South Beach property and SH Group is a third-party beneficiary of the Agreements.  (Compl. ¶¶ 2, 25–44, 61–64.)  Second, the Complaint alleges the Association is aware of the business relationship between Bostany and SH Group.  (*Id.* ¶ 80.)  Third and fourth, the Complaint alleges that the Association, a third party to the business relationship between SH Group and Bostany, intentionally and unjustifiably interfered with SH Group's business relationship with Bostany, including by infringing SH Group's trademarks by adopting, using, and applying to register the 1 HOMES mark (*id.* ¶¶ 45–53, 81), as well as by petitioning to

13

cancel SH Group's trademark registrations (*id.* ¶¶ 55–56).  Finally, the Complaint alleges that SH Group has been damaged as a result of the Association's interference with its business relationship with Bostany, including by impairing the value of SH Group's trademarks, reputation, and goodwill.  (*Id.* ¶¶ 6, 68, 76, 82.)  Thus, the Complaint pleads all five elements of a tortious interference claim.

Defendants' argument that the tortious interference claim "necessarily fail[s]" because Bostany has not breached the Agreements is misplaced.  (Mot. at 7.)  As a preliminary matter, as discussed above in Section IV.B, SH Group pleads breach of contract claims against Bostany.  Regardless, such breaches are not required for the tortious interference claim against the Association.  As the Eleventh Circuit has stated, "the terms of the underlying contract and the parties' expectations should have little bearing on the law that governs third party interference in that contract."  *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1243 (11th Cir. 2007).  Accordingly, "under Florida law, a plaintiff can maintain a cause of action against a third party for tortious interference in a contract even though he might not be able to enforce the underlying contract."  *Id.* (citing *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1344 (M.D. Fla. 2006)).  Thus, the court found in *Border Collie Rescue* that even if the contract at issue were unenforceable, there still could be a tortious interference claim against the party that interfered with the obligations under that contract.  418 F. Supp. 2d at 1344.  Accordingly, the court denied the defendant's motion for summary judgment, finding a genuine issue of material fact.  *Id.*; *see also Grupo Televia*, 485 F.3d at 1244 (reversing summary judgment for defendant and holding that tortious interference claim could be maintained even where plaintiff was "not seeking to enforce its contract rights . . . under Florida law").  Here,

14

accepting all allegations in the Complaint as true, Defendants' Motion as to Count III of the Complaint for tortious interference against the Association should be denied.

### D.   SH Group Properly Pleads a Claim for Trademark Infringement Under Florida Statute Section 495.001, *Et Seq.* (Count VI).

Defendants argue that Count VI for trademark infringement under Florida state law should be dismissed because SH Group has not alleged ownership of a Florida state trademark registration.  (Mot. at 8–9.)  Such argument is misplaced as ownership of a federal registration, which SH Group alleges (Compl. ¶ 21, Ex. A), and to which Defendants have stipulated (Joint Rep. at 3), is sufficient.  "To determine the validity of a trademark infringement claim [under Section 495.131, Florida Statutes], the Florida Legislature instructs courts to assess the claim under federal law."  *Heron Dev. Corp. v. Vacation Tours, Inc.*, No. 16-20683-Civ., 2017 WL 5957743, at *12 (S.D. Fla. Nov. 30, 2017).  Florida state trademark law provides "protection substantially consistent with the federal system of trademark registration and protection." § 495.181, Fla. Stat.; *see also id.* ("the construction given the federal act should be examined as persuasive authority for interpreting and construing this chapter"); *Gift of Learning Found., Inc. v. TGC, Inc.,* 329 F.3d 792, 802 (11th Cir. 2003) (citing *Investacorp, Inc. v. Arabian Inv. Banking Corp.,* 931 F.2d 1519, 1521 (11th Cir. 1991) for the proposition that "the analysis of the Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim") (*per curiam*).  Accordingly, contrary to Defendants' argument, ownership of a federal registration satisfies the statutory requirement that plaintiff own a registration "under this chapter."  § 495.131, Fla. Stat.

In *Heron Development Corp.*, this Court partially denied a motion to dismiss where the plaintiffs did not own Florida state trademark registrations but one of two plaintiffs owned federal trademark registrations.  2017 WL 5957743, at *12.  Defendants' argument that a state

registration is required to state a claim under the Florida statute (Mot. 9) is directly contrary to the holding in *Heron Development Corp.*  There, like here, because a plaintiff "stated a valid trademark infringement claim under the Lanham Act," it "likewise states a valid claim for trademark infringement under § 495.131 of the Florida Trademark Act."  *Id.* at *12 (citing *Custom Mfg. & Eng'g, Inc. v. Midway Serv., Inc.,* 508 F.3d 641, 652 (11th Cir. 2007) (stating that because Florida trademark infringement and unfair competition law is the same as federal law, a court can use federal law analysis to evaluate the merits of the Florida claim)); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition."); *Investacorp*, 931 F.2d at 1521; *Marco's Franchising, LLC v. Marco's Italian Express, Inc.*, No. 8:06–cv–00670–T–17–TGW, 2007 WL 2028845 at *3 (M.D. Fla. July 9, 2007) (analyzing the plaintiff's FDUTPA claim simultaneously with the plaintiff's Lanham Act claim because the former is "derivative of" the latter).

Here, the Complaint alleges, and Defendants have stipulated to, SH Group's ownership of dozens of federal trademark registrations for its "1" family of marks.  (Compl. ¶ 21, Ex. A; Joint Rep. at 3.)  The Complaint also alleges trademark infringement claims under the Lanham Act against both Defendants.  (Compl. ¶¶ 83–91.)  Such allegations support Count VI for trademark infringement under Florida state law as well.  *See Heron Dev. Corp.*, 2017 WL 5957743 at *12.

Defendants' sole citation to the 1989 case *Tally-Ho, Inc. v. Coast Community College District* does not change this result.  (Mot. at 9.)  *Tally-Ho* involved a plaintiff seeking to bring federal and state trademark infringement claims where, unlike here, it had no federal trademark registrations or applications.  889 F.2d 1018, 1021 (11th Cir. 1989).  The court merely held that

"[c]ommon law owners of unregistered marks are limited to common law remedies in infringement actions," and said nothing with regard to actions under Florida law involving federal trademark registrations. *Id.* at 1024. Thus, Defendants' Motion as to Count VI of the Complaint should be denied.

> **E.**   **SH Group Properly Pleads Claims for Trademark Infringement Under the Lanham Act (Counts IV and V) and Common Law (Count VII) Against Bostany.**

Defendants argue that the Complaint fails to "provide any allegation" that Bostany infringed SH Group's trademarks in his individual capacity or could be held liable for the Association's infringement. (Mot. at 9.) That is both factually and legally wrong. The Complaint properly alleges trademark infringement claims against Bostany under federal and common law in his individual capacity given his own use of the 1 HOTELS and 1 HOMES marks as well as his direction, control, and/or inducement of the Association's infringement. (Compl. ¶¶ 45–54, 83–91.)

"To establish a prima facie case for trademark infringement, 'a plaintiff must show (1) that the plaintiff had enforceable . . . rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two.'" *Belen Jesuit Preparatory Sch., Inc. v. Sportswear, Inc.*, No. 1:15-cv-22194-UU, 2015 WL 12516608, at *3 (S.D. Fla. Sept. 23, 2015) (Ungaro, J.) (citing *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1352-53 (S.D. Fla. 2012)); *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2001). "The factors relevant to establishing [a likelihood of confusion with respect to false designation of origin under 15 U.S.C. § 1125(a)] are identical to the factors relevant to establishing a likelihood of confusion with respect to trademark infringement under 15 U.S.C. § 1114." *Tana v. Dantanna's*, 611 F. 3d 767, 773 n.5 (11th Cir. 2010) (modification in original). Similarly, the test for trademark infringement under common law is the same as for

17

federal trademark infringement in the Eleventh Circuit. *Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc.*, 91 F. Supp. 3d 1265, 1288 (S.D. Fla. 2015) (citing *Investacorp*, 931 F.2d at 1521), *aff'd* 830 F.3d 1242 (11th Cir. 2016).

Defendants do not contest that SH Group has alleged ownership of enforceable trademark rights, nor could they given SH Group's ownership of dozens of federal trademark registrations for the 1 HOTEL and 1 HOTEL & HOMES marks, to which Defendants have stipulated. (Compl. ¶ 21, Ex. A; Joint Rep. at 3.)  SH Group also alleges ownership of common law rights to such marks, including 1 HOMES.  (Compl. ¶¶ 1, 20–21.)  Defendants argue that SH Group has not alleged that Bostany has used any infringing mark in his personal capacity (Mot. at 9–10), but that is belied by the Complaint.  SH Group alleges that Bostany has used the 1 HOTELS and 1 HOMES marks in his personal capacity, including by listing himself as the "Board President for 1 Homes at 1 Hotels" on his LinkedIn profile.  (Compl. ¶ 54.)  As reflected in the Complaint, Bostany misleadingly presents himself as being employed by, or otherwise associated with "1 Hotels" (showing SH Group's 1 HOTELS logo) for over two years, where he surprisingly claims to be the "Board President for 1 Homes" and the "Director Of Sustainability at 1 Homes" (a title that does not even exist at SH Group, where Bostany has never been employed).  (*Id.*)  As seen in the Complaint, Bostany's LinkedIn profile does not even mention the Association.  (*Id.*)  Thus, Bostany misleadingly and falsely communicates that he is a board member or executive at SH Group as opposed to a board member and officer of the Association.  (*Id.*)

As alleged in the Complaint, Bostany also is personally liable for his role in causing the Association's trademark infringement, separate and apart from Bostany's own infringing use. (*Id.* ¶¶ 44–53.)  Defendants' argument that Bostany cannot be held personally accountable for his role in the Association's infringement of SH Group's trademark rights is contrary to the law.

Defendants' sole support is the statute and two cases discussed in Section IV.B, which for the reasons discussed above do not apply.  Further, courts have long recognized that representatives of organizations can be held personally liable for trademark infringement.  As corporations can act only through individuals, "if there was an infringement by the corporation, this infringement was caused by some one or more persons, either officers or employees of the corporation, who caused the acts to be done." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991).  Thus, if an individual actively and knowingly caused the infringement, he is personally liable, without requiring piercing the corporate veil.  *See Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994); *Wholesale Stone, LLC v. Stone-Mart Marble & Travertine Grp. LLC*, No. 13-24342-Civ., 2014 WL 11906611, at *3 (S.D. Fla. Mar. 10, 2014)*.*  An individual who actively participates "as a moving force in the decision to engage in the infringing acts or otherwise causes the infringement as a whole to occur" is personally liable for the tortious conduct of the corporation for which that individual is an officer or director.  *TracFone Wireless, Inc. v. Narula*, No. 07-22202-Civ., 2008 WL 11407177, at *7 (S.D. Fla. Jan. 10, 2008).  The rule is not different for a board officer of a non-profit condominium association, particularly where the board officer acts in violation of the Lanham Act, a federal statute, as Bostany has done here.  *See Hous. Opportunities Project for Excellence*, 510 F. Supp. 2d at 1014 (holding that board directors of a condominium association are not shielded by Section 617.0834 from a "federal cause of action" and that the statute also does not protect board members when an individual member breaches their duties through "an act or omission which was committed in bad faith").

The Complaint properly pleads that Bostany, as the Association's Board President, actively and knowingly caused, directed, and induced the Association's infringement as it used

the 1 HOMES mark on its website, board meeting minutes, online store, and merchandise. (Compl. ¶¶ 2, 9, 25, 44, 46–53.)  Thus, as the "moving force" behind the Association's tortious conduct, Bostany is personally liable.  Accordingly, Defendants' Motion as to Counts IV, V, and VII as to Bostany should be denied.

## V.     CONCLUSION

For the reasons discussed above, SH Group requests that the Court deny Defendants' Motion.

Dated: August 3, 2020                              Respectfully submitted,

*/s/ Gavin C. Gaukroger*
Gavin C. Gaukroger
Fla. Bar. No. 76489
Christina M. Perry
Fla. Bar. No. 1003098
**BERGER SINGERMAN LLP**
350 East Las Olas Boulevard
Suite 1000
Fort Lauderdale, FL 33301
Tel. (954) 525-9900; Fax (954) 523-2872
Email: ggaukroger@bergersingerman.com
Email: cperry@bergersingerman.com
Email: DRT@bergersingerman.com

DALE M. CENDALI
(Admitted *Pro Hac Vice*)
CLAUDIA RAY
(Admitted *Pro Hac Vice*)
SHANTI SADTLER CONWAY
(Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel. (212) 446-4800; Fax (212) 446-6460
Email: dale.cendali@kirkland.com
Email: claudia.ray@kirkland.com
Email: shanti.conway@kirkland.com

*Attorneys for Plaintiff*

20

## <u>CERTIFICATE OF SERVICE</u>

I HERBY CERTIFY that on August 3, 2020, a true and correct copy of the foregoing has been transmitted by electronic filing with the Clerk of the court via CM/ECF which will send notice of electronic filing to all counsel of record.

By: */s/ Gavin C. Gaukroger*_____
      Gavin C. Gaukroger