**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:20-CV-22423-UU

SH GROUP GLOBAL IP HOLDINGS, L.L.C.,

    Plaintiff/Counterclaim-Defendant,

v.

2399 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC.

    Defendant/Counterclaim-Plaintiff,

and JOHN P. BOSTANY,

    Defendant.

**PLAINTIFF/COUNTERCLAIM-DEFENDANT SH GROUP**
**GLOBAL IP HOLDINGS, L.L.C.'S REPLY IN SUPPORT OF**
<u>**MOTION FOR ENTRY OF AN ORDER CONFIRMING AN ESI PLAN**</u>

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 1

    A. Metadata Is a Key Aspect of ESI, Which Regularly Is Produced. .......................... 1

    B. Defendants Have Not Met Their Burden of Showing that Metadata Should Not Be Required. ................................................................................................... 4

III. CONCLUSION ................................................................................................................. 10

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aguilar v. Immigration & Customs Enf't*,
    255 F.R.D 350 (S.D.N.Y. 2008) ....................................................................................4

*ANZ Advanced Techs., LLC v. Bush Hog, LLC*,
    No. CV 09-00228-KD-N, 2010 WL 11575131 (S.D. Ala. May 4, 2010) ...........................3, 4

*Branhaven, LLC v. BeefTek, Inc.*,
    288 F.R.D. 386 (D. Md. 2013) ........................................................................................3

*Bray & Gillespie Mgmt., LLC v. Lexington Ins. Co.*,
    259 F.R.D. 568 (M.D. Fla. 2009) ....................................................................................8

*Camesi v. Univ. of Pittsburgh Med. Ctr.*,
    No. CIV.A.09–85J, 2010 WL 2104639 (W.D. Pa. May 24, 2010) ..........................................4

*Continental 332 Fund, LLC v. Albertelli*,
    No. 2:17-CV-41-FTM-38MRM, 2019 WL 9089586 (M.D. Fla. Nov. 20,
    2019) ............................................................................................................................7

*Curley v. Stewart Title Guaranty Co.*,
    No. 2:18-CV-9-FTM-99CM, 2018 WL 6829727 (M.D. Fla. Dec. 28, 2018) ..........................7

*E.E.O.C. v. SVT, LLC*,
    No. 2:13-CV-245-RLM-PRC, 2014 WL 1411775 (N.D. Ind. Apr. 10, 2014) ..........................3

*Eli Lilly & Co. v. Wockhardt Ltd.*,
    No. 1:08-cv-1547-WTL-TAB, 2010 WL 2605855 (S.D. Ind. June 22, 2010) ..........................2

*F.D.I.C. v. Bowden*,
    No. 13-245, 2014 WL 2548137 (S.D. Ga. June 6, 2014) ......................................................4

*Jannx Med. Sys., Inc. v. Methodist Hosps., Inc.*,
    No. 2:08-CV-286-PRC, 2010 WL 4789275 (N.D. Ind. Nov. 17, 2010) ..................................2

*Kleppinger v. Tex. Dep't of Transp.*,
    No. CC L-10-124, 2012 WL 12893654 (S.D. Tex. Aug. 23, 2012) .....................................4, 5

*Kleppinger v. Tex. Dep't of Transp.*,
    Civ. No. L-10-124, 2012 WL 12894139 (S.D. Tex. July 5, 2012) ..................................2, 3, 9

*Lan Li v. Walsh*,
    No. 9:16-CV-81871, 2018 WL 5853038 (S.D. Fla. Nov. 9, 2018) .......................................10

*Lorraine v. Markel Am. Ins. Co.*,
   241 F.R.D. 534 (D. Md. 2007)..................................................................................................3

*Luma Pictures Inc. v. Betuel*,
   No. CV 16-2625-GW, 2016 WL 11519332 (C.D. Cal. Dec. 21, 2016) ...................................10

*In re Netbank, Inc. Secs. Litig.*,
   259 F.R.D. 656 (N.D. Ga. 2009)..............................................................................................5

*OKO Int'l Co. v. Haurex Italy, S.r.l*,
   No. 12-60405-CIV, 2012 WL 12899041 (S.D. Fla. Dec. 11, 2012).........................................6

*In re Payment Card Interchange Fee & Merchant Discount*,
   No. MD.05–1720, 2007 WL 121426 (E.D.N.Y. Jan. 12, 2007)...............................................8

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
   674 F.3d 158 (3d Cir. 2012).....................................................................................................9

*Romero v. Allstate Ins. Co.*,
   271 F.R.D. 96 (E.D. Pa. Oct. 21, 2010) ...................................................................................4

*S2 Automation LLC v. Micron Tech., Inc.*,
   No. CIV 11-0884 JB/WDS, 2012 WL 3656454 (D.N.M. Aug. 9, 2012) ..............................6, 9

*Teledyne Instruments, Inc. v. Cairns*,
   No. 6:12-CV-854-ORL-28, 2013 WL 5781274 (M.D. Fla. Oct. 25, 2013) .........................2, 7

*Valeo Elec. Sys., Inc. v. Cleveland Die & Mfg. Co.*,
   No. 08–cv–12486, 2009 WL 1803216 (E.D. Mich. June 17, 2009).........................................2

*Williams v. Sprint/United Mgmt. Co.*,
   230 F.R.D. 640 (D. Kan. 2005).................................................................................................4

*Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*,
   No. 10-62411-CIV, 2012 WL 12837678 (S.D. Fla. Nov. 7, 2012) ..........................................7

**Rules**

Fed. R. Civ. P. 34................................................................................................................ *passim*

Fed. R. Civ. P. 37(e) .......................................................................................................................3

**Other Authorities**

*2 Successful Partnering Between Inside and Outside Counsel* § 26:10 .........................................7

*Florida Handbook on Civil Discovery Practice*, 2019 ....................................................................4

The Sedona Conference, *The Sedona Guidelines, Best Practice Guidelines and Commentary for Managing Information and Records in the Electronic Age,* The Sedona Conference Working Group Series, 2d Edition November 2007, at 36 (available at <https://thesedonaconference.org>) ............................................................3

The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production.  A Project of the Sedona Conference Working Group on Electronic Document Retention & Production*, 19 Sedona Conf. J. 1 (2018) .......................4, 8

**I.    INTRODUCTION**

The opposition brief of Defendants 2399 Collins Avenue Condominium Association, Inc. (the "Association") and John P. Bostany ("Bostany") (collectively, "Defendants") confirms that there is no reason to depart from the standard requirement that parties produce the metadata of electronically stored information ("ESI"). The Federal Rules require that ESI be produced "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii). Defendants' proposal of printing emails to PDF, stripping out and thus not producing any of the inherent metadata, does not satisfy either prong. Rather, as courts and commentators have recognized, metadata should be produced, and the common and efficient way to do so is by producing documents in the long-accepted TIFF+ format.

Defendants' opposition fails to respond to numerous of SH Group Global IP Holdings, L.L.C.'s ("SH Group") arguments, and does not respond to or distinguish any of its cited cases. Instead, Defendants argue that metadata should not be required for this case under proportionality principles. Yet, Defendants' proposal will make discovery less efficient, and more expensive, and is likely to lead to further discovery disputes and motion practice. Moreover, Defendants' proposal would prejudice SH Group by disabling it from efficiently testing the authenticity of documents, as well as the completeness of Defendants' document preservation, collection, and production. Thus, SH Group respectfully requests that this Court enter its proposed ESI Plan, which requires that the parties produce metadata for ESI.

**II.    ARGUMENT**

    **A.    Metadata Is a Key Aspect of ESI, Which Regularly Is Produced.**

The Federal Rules recognize that ESI is typically called for in document productions, and that it should be produced how it "is ordinarily maintained or in a reasonably useable form[.]" Fed. R. Civ. P. 34(b)(2)(E)(ii). Emails and other ESI are stored in native file types (*e.g.*, .msg for

1

an email or .xlsx for an Excel file), which include metadata such as author, to/from/cc/bcc fields, last accessed, last saved, last modified information, and more. *See Kleppinger v. Tex. Dep't of Transp.*, Civ. No. L-10-124, 2012 WL 12894139, at *1 n.2 (S.D. Tex. July 5, 2012) (discussing information that metadata provides). It also is typical when producing ESI that parties include a "custodian" metadata field, which indicates from whom the document was collected. *See Eli Lilly & Co. v. Wockhardt Ltd.*, No. 1:08-cv-1547-WTL-TAB, 2010 WL 2605855, at *4 (S.D. Ind. June 22, 2010) (ordering production of custodian metadata as documents otherwise were "not usable"); *Valeo Elec. Sys., Inc. v. Cleveland Die & Mfg. Co.*, No. 08–cv–12486, 2009 WL 1803216, at *2 (E.D. Mich. June 17, 2009) (to be produced as ordinarily maintained, emails must be arranged "by custodian, in chronological order and with attachments, if any"). Accordingly, the production of metadata is standard because it satisfies the requirements of Federal Rule 34(b)(2)(E)(ii). *See, e.g.*, *Teledyne Instruments, Inc. v. Cairns*, No. 6:12-CV-854-ORL-28, 2013 WL 5781274, at *11 (M.D. Fla. Oct. 25, 2013) (granting motion to compel re-production of documents with metadata).

Metadata should be produced not only because it is inherent to electronically stored documents, and thus part of providing a complete production under Federal Rule 34, but also because it significantly streamlines the discovery process. For instance, it enables documents to be searched and sorted according to the metadata fields, such as by date, custodian, author, recipient, etc. *See id.*; *Jannx Med. Sys., Inc. v. Methodist Hosps., Inc.*, No. 2:08-CV-286-PRC, 2010 WL 4789275, at *4 (N.D. Ind. Nov. 17, 2010) (granting motion to compel reproduction of documents in form that is "fully searchable and manipulable, with the connections between data fields intact" where party had produced PDF files with no metadata). Otherwise, documents would have to be manually sorted or otherwise organized. Access to metadata greatly

streamlines preparing for depositions, for instance.  *Cf. Branhaven, LLC v. BeefTek, Inc.*, 288 F.R.D. 386, 391–92 (D. Md. 2013) (granting motion for discovery sanctions in part, finding violation of Federal Rule 34(b)(2)(E)(ii) where party produced documents in PDF format just before scheduled depositions).  It also makes it much more efficient to identify apparent gaps and deficiencies in a party's document production.  *See ANZ Advanced Techs., LLC v. Bush Hog, LLC*, No. CV 09-00228-KD-N, 2010 WL 11575131, at *7 (S.D. Ala. May 4, 2010) (granting motion to compel where metadata would "verify the authenticity and completeness" of production).  For instance, being able to efficiently sort documents by date and/or custodian can help identify instances where the production appears to be lacking.  And the metadata of emails also will indicate whether there are associated attachments to the emails.  *See E.E.O.C. v. SVT, LLC*, No. 2:13-CV-245-RLM-PRC, 2014 WL 1411775, at *3 (N.D. Ind. Apr. 10, 2014). This, in turn, can give rise to questions regarding the completeness of a party's document preservation, collection and production efforts, including whether a party has complied with Federal Rule 37(e), which governs the preservation of ESI.

   The metadata for documents also "assist[s] in proving the authenticity of the content of electronic documents."  The Sedona Conference, *The Sedona Guidelines, Best Practice Guidelines and Commentary for Managing Information and Records in the Electronic Age,* The Sedona Conference Working Group Series, 2d Edition November 2007, at 36 (available at <https://thesedonaconference.org>); *see also Kleppinger*, 2012 WL 12894139, at *1 n.2; *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 547–48 (D. Md. 2007) ("Because metadata shows the date, time and identity of the creator of an electronic record, as well as all changes made to it, metadata is a distinctive characteristic of all electronic evidence that can be used to authenticate it under Rule 901(b)(4).").  In particular, reviewing metadata is an efficient way to

ensure that the files have not been modified or tampered with, and thus negates unnecessary disputes regarding the authenticity of documents. *See Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 645–47 (D. Kan. 2005) (ordering production of metadata for "scrubbed" electronic spreadsheets, noting that such metadata could determine authenticity); *ANZ Advanced Techs., LLC*, 2010 WL 11575131, at *7 (granting motion to compel production of metadata).

For all of these reasons, SH Group proposed that the parties exchange document productions in the well-accepted standard format of TIFF files with a load file of metadata.[1] (Dkt. 30-02.) *See, e.g.*, *Aguilar v. Immigration & Customs Enf't*, 255 F.R.D 350, 356 (S.D.N.Y. 2008) (noting that producing ESI in TIFF format with metadata satisfies Rule 34); *F.D.I.C. v. Bowden*, No. 13-245, 2014 WL 2548137, at *5 (S.D. Ga. June 6, 2014); *Florida Handbook on Civil Discovery Practice*, 2019 at 34; *The Sedona Principles*, 19 Sedona Conf. J. at 172–73. Yet, Defendants have maintained their refusal to produce metadata, instead requesting that this Court allow them to produce only searchable PDFs, ***without any metadata***.

### B. Defendants Have Not Met Their Burden of Showing that Metadata Should Not Be Required.

"In recognizing the benefits of producing metadata, '[m]ultiple courts have found that . . . the burden falls on the party objecting to its production to show undue hardship and expense.'" *Kleppinger v. Tex. Dep't of Transp.*, No. CC L-10-124, 2012 WL 12893654, at *9 (S.D. Tex. Aug. 23, 2012), *aff'd*, No. CV L-10-124, 2013 WL 12137773 (S.D. Tex. Aug. Jan. 24, 2013) (citing *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 107–08 (E.D. Pa. Oct. 21, 2010); *cf. Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. CIV.A.09–85J, 2010 WL 2104639, at *7 (W.D. Pa. May 24,

---

[1] Defendants incorrectly state that SH Group has requested productions "exclusively" in a single format. (D.E. 36 ("Opp.") at 1–2.) But as Defendants' later acknowledge, and as reflected in the proposed ESI Plans, the parties have agreed that certain file types be produced in native form. (*Id.* at 2 n.1; D.E. 30-02 ¶¶ 1(b)–(c); D.E. 36-01 ¶¶ 1(c)–(d).)

2010); *In re Netbank, Inc. Secs. Litig.*, 259 F.R.D. 656, 681–82 (N.D. Ga. 2009).[2] Defendants have not met that burden, nor have they even responded to all of SH Group's arguments or any of its cited cases.

Defendants argue that they should not be required to produce documents in TIFF format with metadata because such a format is not "proportional" to the needs of this case and would be burdensome. (Opp. at 2–3.) As a preliminary matter, Defendants attempt to downplay the likely volume of their production by arguing that "the relevant time period in this case as it relates to Defendants' document production is quite limited, as Mr. Bostany joined the Association's Board of Director's [sic] as its President in June 2018 and the Association alleges it began using the 1 HOMES mark in commerce at least as early as December 31, 2018." (Opp. at 5.) But the relevant time period is not so limited. Bostany signed various agreements in 2014, which he subsequently breached. (*See* D.E. 1 ("Compl.") ¶¶ 26, 41.) The 1 Hotel & Homes South Beach property opened in early 2015, and Bostany has been a unit owner since then. (*Id.* ¶ 17.) And while the Association alleges that it first used the 1 HOMES mark in commerce at least as early as December 31, 2018, it likely made the decision to adopt that mark well before then.

Moreover, even if the relevant time period for Defendants' document collection were limited to a two-year period (which is not the case), thousands of relevant documents, including emails, have likely been created, revised and exchanged during that period. For instance, Board members and the dozens of unit owners likely have exchanged numerous emails, there likely have been numerous Board meetings (and various documents associated with such meetings), the Association has filed four trademark applications, and Defendants have expanded their plans to

---

[2] Defendants repeatedly suggest, without citation, that SH Group must "justify" why metadata should be produced (*e.g.*, Opp. at 6), but that is not the standard. *See Kleppinger*, 2012 WL 12893654, at *9.

5

use and their actual use of the 1 HOMES mark.  (*See, e.g.*, *id.* ¶¶ 45–53.)  Further, in their initial disclosures and interrogatory responses to date, Defendants already have identified seven of their agents with discoverable information.  That number is expected to increase based on Defendants' forthcoming document production and depositions, as well as Bostany's forthcoming amended and supplemental response to an interrogatory that requests that he identify persons with knowledge of his contractual obligations.[3]

Moreover, despite Defendants' assertion that this is a "simpl[e]" case such that metadata should not be required to be produced (Opp. at 5), courts regularly require production of such information, including in trademark cases like this one.  *See OKO Int'l Co. v. Haurex Italy, S.r.l*, No. 12-60405-CIV, 2012 WL 12899041, at *2 (S.D. Fla. Dec. 11, 2012) (granting motion to compel production of emails in native format in trademark case after responding party "(summarily) contend[ed]" that such production "would be cost prohibitive and burdensome"). Contrary to Defendants' assertion, the size of the production does not negate the need for metadata, as it provides critical information in assessing the history of documents and emails and the relevant custodians.  Defendants cite no authority for their contention (Opp. at 5), and courts regularly require the production of metadata without regard to the size of the production.  *See supra* at 3–4; *see also S2 Automation LLC v. Micron Tech., Inc.*, No. CIV 11-0884 JB/WDS, 2012 WL 3656454, at *23 (D.N.M. Aug. 9, 2012) (without reference to production size, ordering production of emails as TIFF+ files or native files rather than as PDFs).

Defendants also assert that SH Group's proposed file format would require "engag[ing] costly third-party electronic discovery services from specialized vendors."  (Opp. at 4.)  But

---

[3]  Bostany previously objected to and refused to substantively answer the interrogatory, and thus has not yet identified any persons with knowledge.

parties typically use vendors to search for, collect, and produce documents, and that can be less costly than solely having counsel perform such tasks.  *See 2 Successful Partnering Between Inside and Outside Counsel* § 26:10 ("vendors typically leverage beneficial technology, bill personnel at rates below outside counsel, and utilize project management practices to obtain greater efficiencies.  Accordingly, e-discovery vendors should be able to provide many services at a lower cost than outside counsel.").  Moreover, if Defendants merely wanted to avoid the use of software, they could produce electronically stored documents in their native file formats, which would preserve the documents' metadata.  Instead, Defendants propose to ***strip out*** the metadata that is inherent to their electronically stored documents and produce only PDFs, in contravention to the requirements of Federal Rule 34.[4]  *See Teledyne Instruments, Inc.*, 2013 WL 5781274, at *9 ("A file that is converted to another format solely for production, or for which the application metadata has been scrubbed or altered, is not produced as kept in the ordinary course of business."); *Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, No. 10-62411-CIV, 2012 WL 12837678, at *4 (S.D. Fla. Nov. 7, 2012) (compelling production of metadata for documents originally produced as PDFs) (citing *Bray & Gillespie Mgmt., LLC v. Lexington Ins. Co.*, 259 F.R.D. 568, 585–86 (M.D. Fla. 2009), *quashed in part on other grounds*, 2009 WL 5606058

---

[4]   In justifying the production of only PDF files, Defendants cite to *Curley v. Stewart Title Guaranty Co.*, No. 2:18-CV-9-FTM-99CM, 2018 WL 6829727, at *1 (M.D. Fla. Dec. 28, 2018).  This case is inapposite, however, as it did not consider arguments about the production of metadata.  Moreover, it was limited to the production format for an Excel file, but the parties here have agreed to produce Excel files in native form.  (*See* D.E. 30-02 ¶ D.1.b.; D.E. 36-01 ¶ D.1.c.)  Defendants' other cited case, *Continental 332 Fund, LLC v. Albertelli*, No. 2:17-CV-41-FTM-38MRM, 2019 WL 9089586, at *2 (M.D. Fla. Nov. 20, 2019), also is inapposite as the court declined to compel the *re-review* and *re-production* of a large volume of documents in order to provide metadata.  But here, SH Group has requested metadata before any documents have been produced, precisely to avoid the need for a re-production, and Defendants have asserted that their production is likely to be small (Opp. at 5), indicating that producing metadata should not be burdensome.

7

(M.D. Fla. Nov. 16, 2009) (converting emails to form without metadata did not satisfy either prong of Federal Rule 34(b)(2)(E)(ii))); *In re Payment Card Interchange Fee & Merchant Discount*, No. MD.05–1720, 2007 WL 121426, at *4 (E.D.N.Y. Jan. 12, 2007) (data ordinarily kept in electronically searchable form "should not be produced in a form that removes or significantly degrades this feature").

  Defendants' focus on the process of creating its document production also ignores the critical issue of the parties being able to efficiently use the documents once produced, in keeping with Federal Rule 34.  A party cannot "convert ESI from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation." *The Sedona Principles*, 19 Sedona Conf. J. at 80.  As discussed above, metadata enables the parties to more efficiently sort, organize, and use document productions, ultimately lowering the overall cost of discovery.  *See supra* at 2.  Defendants' proposed format of printed PDFs would require that documents be sorted manually, as there would not be any metadata fields, such as date, author, or custodian information.  Defendants' proposal also would invite discovery disputes, and thus increase the parties' litigation costs, as it would require SH Group to request metadata on a document-by-document basis in order to verify authenticity.  Even if SH Group uses discovery software (which Defendants seek to avoid using themselves), as Defendants suggest (Opp. at 6), that cannot create metadata that is lacking, and thus SH Group would not be able to efficiently sort and organize the documents.

  Moreover, Defendants' proposed production format would make it more difficult and costly for SH Group to identify potential gaps in Defendants' document collection, which would indicate that Defendants' document preservation, collection, and production efforts were

incomplete.  *See supra* at 3.  SH Group also would have no way of telling from whom documents were collected, and thus whether Defendants fulfilled their discovery obligations, as document custodian data would not be provided.  Similarly, Defendants' proposed production format would leave SH Group without critical information, such as bcc recipients, whether attachments were included with emails, and when electronic documents last were edited.  *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 161 n.3 (3d Cir. 2012) (noting that metadata fields provided information "that may not have been available in the documents' text").  While Defendants suggest that they would produce some metadata associated with Board minutes that are kept in PDF format in the ordinary course of business (Opp. at 4)—although that is not reflected in Defendants' ESI Plan—that would only apply to a handful of Defendants' documents and not, for instance, to emails.  Moreover, Defendants will need to produce not only the final PDFs of Board minutes, but also drafts, which presumably were created and are stored in Word or another non-PDF document program.  Under Defendants' proposal, no metadata (*e.g.*, author, date last edited) would be produced for such documents.

Defendants do not contest that without metadata, SH Group will not be able to verify the authenticity of Defendants' documents—a critical use of metadata.  *See supra* at 3–4.  Indeed, a printed PDF of an email may not be accurate, nor would it indicate whether a document was modified.  *See S2 Automation*, 2012 WL 3656454, at *28 (noting that without metadata, the recipient cannot "determine what modifications to the document have occurred over time"); *Kleppinger*, 2012 WL 12894139, at *1 n.2 (metadata can include information relevant to authentication).  Thus, Defendants' suggestion that SH Group can simply look at the "header" of the printed-to-PDF emails is meaningless. (Opp. at 4.)  Defendants also assert that metadata should not be needed "if there are no genuine issues of authenticity" and that "[s]hould any

9

issues regarding the authenticity" of a document arise, "Defendants believe they should be raised on a case-by-case basis with the Court[.]" (*Id.* at 5.) Requiring SH Group to sift through Defendants' production for potential issues and then follow up with the Court as needed would be inefficient and only increase the costs of both parties, and needlessly burden this Court with discovery disputes. This is precisely what the Court's Order requiring the parties to agree in advance to an ESI plan seeks to avoid. (D.E. 14 at 2–3.) Moreover, the authenticity of email communications and other documents are expected to be key issues, particularly as one issue in the case is the timing and scope of Defendants' use of 1 HOMES. (*See* Compl. ¶¶ 45–54; D.E. 23, Counterclaims ¶¶ 10–11, 24.) Without metadata, SH Group will have no way of telling when a non-email document or an email attachment (such as one showing Defendants' use of the 1 HOMES mark at issue) was created or last edited, for instance. Accordingly, metadata is critically relevant and proportional to the needs of this case. *See Luma Pictures Inc. v. Betuel*, No. CV 16-2625-GW (PLAX), 2016 WL 11519332, at *7 (C.D. Cal. Dec. 21, 2016) (holding that "the requested documents, including their metadata, are relevant to the parties' claims or defenses and proportional to the needs of the case" in copyright case where documents' "time, date and location" were "key issue[s]"); *cf. Lan Li v. Walsh*, No. 9:16-CV-81871, 2018 WL 5853038, at *1 (S.D. Fla. Nov. 9, 2018).

### III.   CONCLUSION

For the foregoing reasons, SH Group respectfully requests that this Court enter an Order confirming the ESI Plan attached to the Motion as Exhibit B (D.E. 36-02), including requiring production of ESI in the form of TIFF images with load files and metadata.

Dated: September 15, 2020	Respectfully submitted,

*/s/ Gavin C. Gaukroger*
Gavin C. Gaukroger
Fla. Bar. No. 76489
Christina M. Perry
Fla. Bar. No. 1003098
**BERGER SINGERMAN LLP**
350 East Las Olas Boulevard
Suite 1000
Fort Lauderdale, FL 33301
Tel. (954) 525-9900
Fax (954) 523-2872
Email: ggaukroger@bergersingerman.com
Email: cperry@bergersingerman.com
Email: DRT@bergersingerman.com

DALE M. CENDALI
(admitted *pro hac vice*)
CLAUDIA RAY
(admitted *pro hac vice*)
SHANTI SADTLER CONWAY
(admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel. (212) 446-4800
Fax (212) 446-6460
Email: dale.cendali@kirkland.com
Email: claudia.ray@kirkland.com
Email: shanti.conway@kirkland.com

*Attorneys for Plaintiff/Counterclaim-Defendant*

**CERTIFICATE OF SERVICE**

I HERBY CERTIFY that on September 15, 2020, a true and correct copy of the foregoing has been transmitted by electronic filing with the Clerk of the court via CM/ECF which will send notice of electronic filing to all counsel of record.

By: */s/ Gavin C. Gaukroger*
Gavin C. Gaukroger