## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-22423-UU

SH GROUP GLOBAL
IP HOLDINGS, LLC,

      Plaintiff/ Counter-Defendant,

v.

2399 COLLINS AVE. CONDOMINIUM
ASSOCIATION, INC., a Florida corporation,
and JOHN P. BOSTANY, an Individual,

      Defendants/ Counterclaimant.

_____/

## ORDER ON PARTIAL MOTIONS TO DISMISS

THIS CAUSE comes before the Court upon (1) Defendants' Partial Motion to Dismiss Plaintiff's Complaint (D.E. 22) ("Defendants' Motion") and (2) Plaintiff's Partial Motion to Dismiss Defendant 2399 Collins Ave. Condominium Association's Counterclaim Counts VI and VII (D.E. 29) ("SH Group's Motion"). The Court has considered the Motions, the pertinent portions of the record, and is otherwise fully advised in the premises. For the reasons discussed herein, Defendants' Motion is granted in part, and SH Group's Motion is granted.

**I.**     **Background**

The following facts are taken from Plaintiff/Counter-Defendant's Complaint (D.E. 1) (the "Complaint") and Defendant/Counterclaimant 2399 Collins Avenue Condominium Association's Counterclaim (D.E. 23 at 13–29) (the "Counterclaim"), unless otherwise indicated.

    A.  The Complaint

        **i. The Parties**

1

Plaintiff/Counter-Defendant SH Group Global IP Holdings LLC ("SH Group") is the owner of the trademarks at issue in this case, which are licensed to and used by SH Group's affiliates in connection with developing, promoting, managing and/or operating their "1 HOTEL" and "1 HOTEL & HOMES"-branded properties. Compl. ¶ 7. SH Group owns 1 HOTEL & HOMES, a distinct, nature-inspired lifestyle hotel and residence brand, which provides hospitality and residential services under the 1 HOTEL & HOMES marks. *Id.* ¶ 16. SH Group has invested significant resources in developing and promoting its business under the 1 HOTEL & HOMES marks. *Id.* ¶ 19. The 1 HOTEL & HOMES marks appear in a wide variety of advertisements and promotional materials, including but not limited to brochures, websites, social media, magazines, and newspapers. *Id.* In the five years since its opening, the 1 HOTEL & HOMES SOUTH BEACH property, at issue in this case, has won such prestigious accolades as being listed on Travel + Leisure's "It List," the Forbes list of Best Miami Beach Resorts, and receiving the AAA Four Diamond Award, among others. *Id.* ¶ 18. The condominium and penthouse properties within the 1 HOTEL & HOMES SOUTH BEACH property have been met with similar acclaim. *Id.*

Defendants are 2399 Collins Avenue Condominium Association, Inc. (the "Association"), the Condominium Association for the condominiums located within 1 HOTEL & HOMES SOUTH BEACH in Miami Beach, Florida, and the Association's Board President, John Bostany ("Bostany"), who is also a condominium unit owner (collectively, "Defendants"). *Id.* ¶ 2.

### ii. The Trademarks

SH Group's claims arise out of Defendants' infringement of, and efforts to trade on, SH Group's "1" trademarks. *Id.* ¶ 1. The United States Patent and Trademark Office ("USPTO") has granted SH Group dozens of trademark registrations for its 1 HOTEL & HOMES Marks (collectively, the "SH Group Registered Marks"). *Id.* ¶ 21; D.E. 1-1 (list of SH Group's trademark

registrations). The SH Group Registered Marks consist of distinct variations of the number "1." *See id.* SH Group also owns additional pending trademark applications for its 1 HOTEL & HOME Marks (the "SH Group Pending Marks"). *Id.* The SH Group Registered Marks were accepted by the USPTO without proof of secondary meaning or a disclaimer of the term "1," reflecting that such term is inherently distinctive of SH Group's goods and services. Compl. ¶ 22.

In 2019, the Association, at the direction, inducement and control of Bostany, began referring to itself as "1 HOMES" and began a "calculated strategy" to assert ownership over and attempt to use such trademark. *Id.* ¶ 45. The Association did not consult with or seek permission from any employee or representative from SH Group before using "1 HOMES" for its condominium association services, on its website, and on merchandise. *Id.* Upon information and belief, SH Group contends that the Association's use of the "1 HOMES" logo includes, without limitation, display of 1 HOMES on the website of the Association, and use of the 1 HOMES logo on the minutes of the Board of Directors of the Association and related newsletters sent to unit owners. *Id.* ¶ 50.

On June 3, 2019, the Association filed application Serial No. 88/ 57,662 (the "'662 Application") before the USPTO to register "1 HOMES" in International Class 36 for "Building management; Real estate services, namely, condominium management services." *Id.* ¶ 46. Bostany signed the Association's '662 Application on behalf of the Association, as its Board President. *Id.* The USPTO refused registration based on a likelihood of confusion with SH Group's registrations. *Id.* ¶ 48.

Since receiving SH Group's cease and desist letters and the USPTO's refusal of its initial trademark application, the Association has filed three additional applications to register the  1 HOMES logo with the USPTO: (1) Serial No. 88/879,248 for "1 HOMES" in International Class

25 for "Hats; Shirts;" (2) Serial No. 88/914,537 for "1 HOMES" in International Class 21 for "mugs; glasses; and tea kettles," in International Class 24 for "home goods, namely beach towels, throws and blankets," and in International Class 28 for "stuffed animals and plush toys;" and (3) Serial No. 88/925,433 for "1 HOMES" in International Class 35 for "online retail store services for clothing and accessories; On-line retail gift shops" (collectively, the "Association's 1 HOMES Applications"). *Id.* ¶ 49.

The Association has used the 1 HOMES logo on a growing number of goods and services, misleading consumers further as to SH Group's sponsorship, connection, or association with the Association. *Id.* ¶ 52. For example, the Association has recently begun providing an online store where consumers can purchase clothing and other goods bearing the 1 HOMES logo. *Id.*

Bostany has listed himself as the "Board President for 1 Homes at 1 Hotels" on his LinkedIn profile. *Id.* ¶ 54. Bostany's LinkedIn profile uses one of SH Group's distinctive 1 HOTELS marks. *Id.* (screenshot of Bostany's LinkedIn profile). Bostany is not currently, nor has he ever been, an employee or board member of SH Group or 1 Hotel & Homes. *Id.*

Apart from its attempts to register the 1 HOMES logo, the Association at the direction, inducement, and control of Bostany, has petitioned to cancel several of SH Group's Registered Marks in the United States. *Id.* ¶¶ 55–57.

SH Group has attempted in good faith to negotiate an amicable resolution of the parties' trademark disputes, but Defendants have refused to cease interfering with and infringing SH Group's trademark rights. *Id.* ¶¶ 5, 47.

### iii.  The Contracts

Bostany is a party to a Purchase Agreement, dated January 21, 2014, in which he purchased a condominium unit at the 1 HOTEL & HOMES SOUTH BEACH property (the "Purchase

Agreement"). *Id.* ¶ 26. The Purchase Agreement was also executed by 2377 Collins Avenue, L.P., the developer of the condominium properties at the 1 HOTEL & HOMES SOUTH BEACH property ("2377 Collins"). *Id.* SH Group is a third-party beneficiary of the Purchase Agreement. *Id.* The Purchase Agreement is not attached to the Complaint or to Defendants' Motion to Dismiss. SH Group contends that Paragraph 32(e) of the Purchase Agreement, states:

> Under no circumstances shall the Hotel Brand Intellectual Property be deemed part of the Condominium Property or an appurtenance of any Unit**. In no event shall the Condominium, the Condominium Association nor the Unit Owners have any right, title or interest in any name under which the Hotel is operated or in any other aspect of the Hotel Brand Intellectual Property**, or in any licensing arrangement between the Hotel Brand and any other party.

*Id.* ¶ 28 (emphasis added). And Paragraph 33(b) of the Purchase Agreement states:

> Buyer further acknowledges and agrees that by acquiring a Unit, **Buyer acquires no right, title, ownership or interest in the name "1 Hotel" or "1 Hotel & Residences**," or the marks, logos or other trademarks, service marks, trade names, symbols, emblems, logos, insignias, indicia of origin, slogans and designs used in connection with "1 Hotel" or "1 Hotel & Residences" (collectively, the "SH Group Marks"), all of which belong to SH Group.

*Id.* ¶ 28 (emphasis added).[1]

Each individual condominium owner within 1 HOTEL & HOMES SOUTH BEACH, including Bostany, agreed to the Buyer's Acknowledgement upon purchasing a condominium. *Id.* ¶ 41. Bostany executed the Buyer's Acknowledgement on January 21, 2014. *Id.* The Buyer's Acknowledgement states: "Buyer shall not interfere with or contest Licensor's rights in and to the

---

[1] The Purchase Agreement incorporates by reference three documents, each of which also prohibits infringement upon 1 HOTEL & HOMES' marks and intellectual property rights: (1) the publicly recorded Declaration of 2399 Collins Avenue Condominium, dated December 24, 2014 ("Declaration of Condominium"); (2) the publicly filed Declaration of Covenants, Restrictions, and Easements, dated December 26, 2014 (the "Resort Covenants"); and (3) the publicly filed "Prospectus for 2399 Collins Avenue Condominium" with an effective date of August 2013 (the "Prospectus"). Compl. ¶¶ 31–40.

Brand Trademarks." *Id.* ¶ 42. The Licensor referred to in the Buyer's Acknowledgement is SH Group. *Id.*

### iv.  The Claims

On June 12, 2020, SH Group filed suit against Defendants alleging the following causes of action: (Count 1) breach of Purchase Agreement against Bostany; (Count 2) breach of Buyer's Acknowledgement against Bostany; (Count 3) tortious interference with a business relationship against the Association; (Count 4) infringement of registered trademarks, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, against both Defendants; (Count 5) false designation of origin, in violation of Section 43(A) of the Lanham Act, 15 U.S.C. § 1125(a), against both Defendants; (Count 6) Florida trademark infringement, in violation of Fla. Stat. §§ 495.001 *et seq.*, against both Defendants; (Count 7) common law trademark infringement against both Defendants; (Count 8) common law unfair competition against both Defendants; and (Count 9) declaratory judgment for the denial of the Association's 1 Homes Applications. SH Group seeks permanent injunctive relief to stop the Defendants' infringing and interfering activities and contractual breaches, as well as monetary damages to compensate SH Group for the harm suffered as a result of Bostany's contractual breaches and Defendants' infringement of SH Group's 1 HOTEL & HOMES Marks. *Id.* ¶ 6. SH Group also seeks a declaratory judgment that the Association's four pending applications for the Association's 1 HOMES logo be denied by the USPTO.  *Id.*

Defendants now ask the Court to dismiss all counts against Bostany. D.E. 22 at 1. In addition, Defendants request that the Court dismiss Counts 3 and 6 for failure to state a claim. *Id.* The Motion is ripe for disposition.

### B.  The Counterclaim

On July 20, 2020, the Association filed a Counterclaim against SH Group, alleging, as

relevant to this Motion, claims of false designation of origin in violation of 15 U.S.C. § 1125(a) (Count 6) and common law trademark infringement (Count 7). D.E. 23 at 13–30. The Association maintains that SH Group willfully infringed upon the Association's 1 HOMES "mark" and "the Association's hard-earned goodwill therein." Counterclaim ¶ 1. At no point does the Association claim to have a registered trademark. Rather, the Association states that it has used the 1 HOMES logo since as early as December 31, 2018, that it first applied for registration of the 1 HOMES logo with the USPTO on June 3, 2019, and that the USPTO issued a non-final office action on August 22, 2019, rejecting registration of the 1 HOMES logo due to likelihood of confusion with SH Group's Registered marks. *Id.* ¶¶ 10, 11. The Association has four applications pending before the USPTO. *Id.* ¶ 23. The Association claims that the 1 HOMES logo "is protected as a common law trademark due to the Association's extended use of the mark in commerce" and that SH Group improperly used the 1 HOMES logo in commerce. *Id.* ¶¶ 24, 25.

## II.   <u>Legal Standard</u>

To state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a court, at this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting

*Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense. *Id.* at 679.

### III.   Analysis

#### A.   Defendants' Partial Motion to Dismiss Complaint is Granted in Part

##### i.   The Counts Against Bostany Survive

###### 1.   *Breach of Contract Claims Against Bostany (Counts 1 and 2)*

Defendants ask the Court to dismiss Count 1 (breach of Purchase Agreement) and Count 2 (breach of Buyer's Acknowledgment) against Bostany because (1) the breach of contract counts fail to state a claim upon which relief can be granted and (2) applying Fla. Stat. § 617.0834, the Complaint fails to allege how Bostany, as a director of the Association, is personally liable for actions taken in his role as President of the Association. D.E. 22 at 4–7. SH Group responds that it has stated breach of contract claims and that Section 617.0834 does not apply here. D.E. 26 at 13–18.

First, SH Group has stated sufficient breach of contract claims against Bostany. A breach of contract claim under Florida law requires three elements: "(1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (*per curiam*). In its Complaint, SH Group alleges (1) the existence and validity of the Agreements, to

which Bostany is a party (Compl. ¶¶ 26–43, 59–65, 72–73); (2) the breach of the Agreements by

Bostany, a party to the Agreements (*id.* ¶¶ 44–54, 66–67); and (3) damages to SH Group relating

to Bostany's breach of the Agreements (*id.* ¶¶ 68, 76). SH Group alleges that Bostany personally

used the 1 HOTELS and 1 HOMES marks (*id.* ¶ 54), and that he directed, controlled, and/or

induced the Association's infringement, filing of trademark applications (one of which Bostany

himself signed), and attempt to cancel SH Group's trademark registrations (*id.* ¶¶ 44–53). As the

Complaint alleges, these actions are directly contrary to, and a material breach of, Bostany's

obligations under the Purchase Agreement and Buyer's Acknowledgment. *Id.* ¶¶ 26–40, 66–67.

Second, Section 617.0834 does not relieve Bostany of potential liability in this case.

Section 617.0834 provides that:

> An officer or director of a nonprofit organization. . . is not personally liable
> for monetary damages to any person for **any statement, vote, decision, or
> failure to take an action, regarding organizational management or
> policy** by an officer or director, unless:
>> (a) The officer or director breached or failed to perform his or her
>> duties as an officer or director; and
>> (b) The officer's or director's breach of, or failure to perform, his or
>> her duties constitutes:
>>> 1. A violation of the criminal law…;
>>> 2. A transaction from which the officer or director derived
>>> an improper personal benefit, directly or indirectly; or
>>> 3. Recklessness or an act or omission that was committed in
>>> bad faith or with malicious purpose or in a manner exhibiting
>>> wanton and willful disregard of human rights, safety, or
>>> property.

Fla. Stat. § 617.0834 (emphasis added). Here, SH Group alleges that Bostany breached *his own*

contractual obligations owed to SH Group and that his acts against SH Group and infringement of

its intellectual property are distinct from his fiduciary duties relating to the "organizational

management or policy" of the Association. *See* Compl. ¶¶ 3, 44, 46, 54, 57, 66, 74. The Court

cannot conclude as a matter of law that Bostany is insulated from liability when the Complaint

alleges that he personally used the 1 HOTELS and 1 HOMES marks directed, controlled, and/or induced the Association to infringe on and interfere with SH Group's trademark.

Further, the two cases Bostany cites do not support his argument. D.E. 22 at 5. Both *Perlow v. Goldberg*, 700 So. 2d 148, 150 (Fla. 3d DCA 1997) and *Sonny Boy, L.L.C. v. Asnani*, 879 So. 2d 25, 27–28 (Fla. 5th DCA 2004) involved breach of fiduciary duty claims by condominium owners against board members for their alleged mismanagement of their associations' affairs. Those cases dealt with the type of negligent management allegations that Section 617.0834 was designed to address, which are not at issue here. Notably, the court in *Perlow* stated that the "statutory purpose" of Section 617.0834 is "to shield condominium association directors from individual liability in instances of negligent management." 700 So. 2d at 150. Similarly, *Sonny Boy* concerned allegations that the officer "failed to cause the condominium association to maintain and repair specifically alleged items of common elements." *Sonny Boy, L.L.C.,* 879 So. 2d at 27–28. Such allegations and claims are not present in this case. Rather, Counts 1 and 2 relate to Bostany's own contractual obligations to SH Group and his breaches thereof.[2] SH Group has stated adequate breach of contract claims against Bostany.

---

[2] With respect to Count 1, Bostany argues that even if he could be held liable, the claim substantively fails because "1 HOMES is not one of the trademarks [explicitly] identified" in the Purchase Agreement and agreements it incorporates by reference. D.E. 22 at 7. This argument is inappropriate on a Rule 12(b)(6) motion because, at this stage of the litigation, the Court cannot conclude as a matter of law that the 1 HOMES mark is not "Hotel Brand Intellectual Property" within the intended meaning of Paragraph 32(e) of the Purchase Agreement. *See, e.g., BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521, 524 (11th Cir. 2017) ("It was improper for the district court to interpret the contract when considering the motion to dismiss."); *Lee v. Amex Assurance Co.*, No. 1:16-cv-21087-UU, 2016 WL 8677915, at *3 (S.D. Fla. June 3, 2016) (Ungaro, J.) (contractual ambiguities "hinge on factual determinations that the Court cannot resolve on a motion to dismiss"); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1312 (S.D. Fla. 2014) ("Contract interpretation is typically inappropriate at the motion to dismiss stage.").

*2.  The Remaining Counts Against Bostany*

Bostany also moves to dismiss Count 4 (infringement of registered trademarks), Count 5 (false designation of origin), Count 7 (common law trademark infringement), and Count 8 (common law unfair competition) against him. D.E. 22 at 9–10. These Counts are also alleged against the Association. Bostany argues that SH Group fails to allege how Bostany, in his personal capacity, used the 1 HOMES logo in commerce or otherwise should be held liable as an individual for the Association's alleged infringement. *Id.*

With respect to Count 4, "[t]o establish a prima facie case in an ordinary trademark infringement suit [under 15 U.S.C. § 1114], a claimant need only demonstrate that: (1) it enjoys enforceable rights in its mark, and (2) the alleged infringer adopted a mark that is the same or confusingly similar." *SunAmerica Corp. v. Sun Life Ins. Co. of Can*., 77 F.3d 1325, 1334 (11th Cir. 1996). Similarly, for Count 5, to establish a prima facie case for false designation of origin under 15 U.S.C. § 1125(a), "a plaintiff must show (1) that the plaintiff had enforceable . . . rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2001). The factors relevant to establishing a likelihood of confusion with respect to false designation of origin under 15 U.S.C. § 1125(a) are identical to the factors relevant to establishing a likelihood of confusion with respect to trademark infringement under 15 U.S.C. § 1114. *Tana v. Dantanna's*, 611 F. 3d 767, 773 n.5 (11th Cir. 2010). As to Count 7, in the Eleventh Circuit, the test for common law trademark infringement is the same as for federal trademark infringement under 15 U.S.C. § 1125(a). *Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc.*, 91 F. Supp. 3d 1265, 1288 (S.D. Fla. 2015) (citing *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1521 (11th Cir. 1991)), *aff'd* 830 F.3d 1242 (11th Cir. 2016); *see also Am. United Life*

*Ins. Co. v. Am. United Ins. Co.*, 731 F. Supp. 480, 486 (S.D. Fla. 1990). Finally, as to Count 8, the elements of a common law unfair competition claim based on trade name or service mark infringement are: (1) that plaintiff is the prior user of the trade name or service mark; (2) that the trade name or service mark is arbitrary or suggestive or has acquired secondary meaning; (3) that the defendant is using a confusingly similar trade name or service mark to indicate or identify similar services rendered (or similar goods marketed) by it in competition with plaintiff in the same trade area in which plaintiff has already established its trade name or service mark; and (4) that as a result of defendant's action or threatened action, consumer confusion as to the source or sponsorship of defendant's goods and services is likely. *American Bank of Merritt Island v. First Am. Bank and Trust*, 455 So.2d 443, 445-6 (Fla. 4th DCA 1984), *review denied*, 461 So.2d 114 (Fla. 1985); *Am. United Life Ins. Co.*, 731 F. Supp. at 486.

Here, Bostany does not contest that SH Group has alleged ownership of enforceable registered or common law trademark rights. Rather, Bostany argues that SH Group has not alleged that Bostany has used any infringing mark in his personal capacity. Bostany's claim is belied by the Complaint: SH Group alleges that Bostany has used the 1 HOTELS and 1 HOMES marks in his personal capacity by (1) listing himself as the "Board President for 1 Homes at 1 Hotels" on his LinkedIn profile,[3] and (2) actively directing the Association to commit the violations complained of. Compl. ¶¶ 4, 44–53, 54.

---

[3] As alleged in the Complaint, Bostany misleadingly represents himself as being employed by or otherwise associated with "1 Hotels" for over two years by claiming that he is the "Board President for 1 Homes" and the "Director of Sustainability at 1 Homes" and using a distinctive "1 HOTELS" logo to effect those representations. *Id.* Bostany's LinkedIn profile does not mention the Association. *Id.* Thus, SH Group has alleged that Bostany, in his personal capacity, has engaged in the unauthorized use of SH Group Registered Marks by misrepresenting that he is a board member or executive at SH Group as opposed to a board member and officer of the Association.

Bostany's only sources of support for his argument are Fla. Stat. § 617.0834, *Perlow*, and *Sonny Boy*, which do not apply for the reasons explained above. More importantly, courts have recognized that representatives of organizations can be held personally liable for trademark infringement. "Because of its very nature a corporation can act only through individual. Obviously, if there was an infringement by the corporation, this infringement was caused by some one or more persons, either officers or employees of the corporation, who caused the acts to be done." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (citin*g Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19 (5th Cir. 1968)). Thus, "[i]f an individual actively and knowingly caused the infringement, he is personally liable," without requiring piercing the corporate veil. *Id.*; *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994); *Wholesale Stone, LLC v. Stone-Mart Marble & Travertine Grp. LLC*, No. 13-24342-Civ., 2014 WL 11906611, at *3 (S.D. Fla. Mar. 10, 2014*)*. An individual who actively participates "as a moving force in the decision to engage in the infringing acts or otherwise causes the infringement as a whole to occur" is personally liable for the conduct of the corporation for which that individual is an officer or director. *TracFone Wireless, Inc. v. Narula*, No. 07-22202-Civ., 2008 WL 11407177, at *7 (S.D. Fla. Jan. 10, 2008). The rule is not different for a board officer of a non-profit condominium association, particularly where the board officer acts in violation of the Lanham Act, a federal statute, as Bostany has done here. *See Hous. Opportunities Project for Excellence, Inc. v. Key Colony No. 4 Condo. Assoc.*, 510 F. Supp. 2d 1003, 1014 (S.D. Fla. 2007) (holding that board directors of a condominium association are not shielded by Section 617.0834 from a "federal cause of action" and that the statute also does not protect board members when an individual member breaches their duties through "an act or omission which was committed in bad faith").

In this case, the Complaint alleges that Bostany, as the Association's Board President, "direct[ed], induce[d], and control[led]" the Association to commit the violations complained of. Compl. ¶¶ 4, 5, 46; *see TracFone Wireless, Inc. v. Narula*, No. 07-22202-Civ., 2008 WL 11407177, at *7 (S.D. Fla. Jan. 10, 2008). As SH Group adequately pleads that Bostany was the "moving force" behind the Association's conduct, Bostany may be held personally liable. Accordingly, Bostany's Motion as to Counts 4, 5, 7, and 8 is denied.

#### ii. Tortious Interference with a Business Relationship Against the Association (Count 3) is Dismissed [4]

The Association moves to dismiss Count 3 for failure to state a claim. To state a claim for tortious interference with a business relationship, a plaintiff must show: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff as a result of the breach of the relationship. *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985); *see also Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001). SH Group claims that that the Association improperly interfered with the "business relationship" between SH Group and Bostany, which existed pursuant to the contracts Bostany and 2377 Collins executed for Bostany's purchase of his condominium. Compl. ¶¶ 78–82.

SH Group cannot claim that the Association, through Bostany's own actions, somehow caused a tortious interference between Bostany himself and SH Group. *See Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381, 386 (Fla. 4th DCA 1999) (citing *Abruzzo v. Haller*, 603 So.2d 1338 (Fla. 1st DCA 1992) ("[T]he interfering defendant must be a

---

[4] Defendants' Motion to Dismiss Counts 3 and 6 is not moot, despite SH Group's argument to the contrary. D.E. 26 at 12; D.E. 28 at 10.

third party, a stranger to the business relationship."). SH Group alleges that Bostany "induced, directed, and encouraged" the Association to trespass on SH Group's intellectual property rights, *see id.* ¶ 44, then, conveniently, alleges that the "Association improperly, intentionally, and unjustifiably interfered in the relationship between SH Group and Bostany . . . by attempting to use the Association's [1 HOMES logo] in commerce, seeking to register the Association's 1 HOMES Applications and filing the Cancellation Petition. The Association's actions intended to induce a breach or disruption of the business relationship between SH Group and Bostany." *Id.* ¶ 82. The Court is not persuaded by SH Group's contradictory arguments that Bostany can be responsible for the acts of the Association, and yet be completely independent for purposes of qualifying as a separate entity as required to bring a claim for tortious interference.[5] Count 3 is dismissed.

### iii.  Florida Trademark Infringement (Count 6) is Dismissed

Defendants move to dismiss Count 6 because SH Group fails to allege that it owns a valid Florida state trademark registration, which is required to bring a cause of action under Fla. Stat. §

---

[5] Further, the Court is not convinced that SH Group sufficiently alleges that it was in a "business relationship" with Bostany. SH Group claims that the business relationship between it and Bostany exists pursuant to the "Purchase Agreement, Buyer's Acknowledgement, and the documents incorporated by reference therein." *Id.* ¶ 79. SH Group argues that "the Complaint alleges the existence of a business relationship between SH Group and Bostany because Bostany owns a unit at SH Group's 1 Hotel & Homes South Beach property and SH Group is a third-party beneficiary of the Agreements." D.E. 26 at 19 (citing Compl. ¶¶ 2, 25–44, 61–64). SH Group cites no law supporting the proposition that a condominium owner is in a "business relationship" with the building in which he lives. "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen v. Georgetown Manor*, 647 So. 2d 812, 815 (Fla. 1994). The contracts in this case involved the purchase of a condominium from 2377 Collins under which SH Group was a third-party beneficiary. Compl. ¶ 26. SH Group fails to allege how it and Bostany had an identifiable business agreement that would have been completed had the Association not interfered.

495.131. D.E. 22 at 8. SH Group does not state whether it has trademarks registered in Florida, but contends that Florida trademark registration is not necessary to plead a Florida trademark infringement cause of action because the Complaint states a valid federal trademark infringement claim. D.E. 26 at 23–25.

Under Section 495.131:

[A]ny person who shall, without the consent of the registrant:

(1)   Use any reproduction, counterfeit, copy, or colorable imitation of a **mark registered under this chapter** in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive; or

(2)   Reproduce, counterfeit, copy, or colorably imitate a **mark registered under this chapter** and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon or in connection with the sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive;

shall be liable in a civil action by the owner of such registered mark . . . .

Fla. Stat. § 495.131 (emphasis added).

As SH Group explains, Florida trademark registration and protection are "substantially consistent with the federal system of trademark registration and protection." Fla. Stat. § 495.181. "The Eleventh Circuit has addressed whether registration in the state of Florida is required in order to seek relief under the Florida Act." *Delta Sigma Theta Sorority, Inc. v. Bivins*, No. 2:14-cv-147-FtM-38CM, 2014 U.S. Dist. LEXIS 175416, at *9 (M.D. Fla. July 22, 2014), R&R adopted at 2014 U.S. Dist. LEXIS 175419 (M.D. Fla. Dec. 19, 2014) (citing *Tally-Ho, Inc. v. Coast Cmty. College Dist.*, 889 F.2d 1018, 1024 (11th Cir. 1989)). The Eleventh Circuit in *Tally-Ho* acknowledged that "[i]n Florida, registration under the trademark statute is prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive

right to use the mark in this state in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein." *Tally-Ho*, 889 F.2d at 1023. The court went on to note that the Florida statute permits a registrant to sue for infringement under Section 495.131, but "common law owners of unregistered marks are limited to common law remedies in infringement actions." *Id.*

In *Delta Sigma Theta Sorority, Inc. v. Bivins*, the court, following *Tally-Ho*, rejected the plaintiff's argument that a federally regulated mark may be enforced under Chapter 495 of the Florida Statutes. 2014 U.S. Dist. LEXIS 175416, at *10 ("In this case, Delta Sigma has not alleged or shown that any of the marks at issue are registered in the state of Florida. Thus, because common law owners of marks that are unregistered in the state of Florida under Section 495.131 are limited to common law remedies in infringement actions, the Court finds that amendment to add such a claim would be futile. Delta Sigma may bring a count for Florida common law trademark infringement, which it does . . . but in order to be afforded protection for trademark infringement under the Florida Act, Plaintiff must have a mark registered in the state of Florida, which it has not shown."). Judge Middlebrooks in *Solid 21, Inc. v. Nardin* also held that a plaintiff cannot enforce a federal trademark under Florida statute without a registered Florida trademark. *Solid 21, Inc. v. Nardin*, Case No. 19-CV-80474-MIDDLEBROOKS, 2019 U.S. Dist. LEXIS 227359, at *18–19 (S.D. Fla. Dec. 12, 2019) ("Regardless of whether the standards [for Florida and federal trademark infringement] are similar (or even identical), a plaintiff must register its mark with the State of Florida to have an actionable Florida statutory trademark infringement claim. Accordingly, Count Six of the Amended Complaint (the Florida statutory trademark infringement claim) is dismissed."). This Court will do the same. Here, SH Group pleads both federal trademark infringement (Count 4) and common law trademark infringement (Count 7). Further, without

alleging a Florida state trademark registration, Count 6 is duplicative of the other two trademark infringement claims. Accordingly, Count 6 is dismissed.

      B.  <u>SH Group's Motion to Dismiss Counts 6 and 7 of the Counterclaim is Granted</u>

SH Group argues that Counterclaims 6 and 7 must be dismissed for failure to state a claim because (1) the Association fails to allege that it has enforceable trademark rights to the 1 HOMES logo and (2) the Association fails to plead how its use of the 1 HOMES logo would confuse consumers. D.E. 29. In response, the Association asks for leave to file an amended counterclaim; the main differences between the Counterclaim and the proposed amended counterclaim are that the proposal alleges that the Association's use of the 1 HOMES logo predates SH Group's use of the 1 HOMES logo and that SH Group has used the 1 HOMES logo in commerce. D.E. 31; D.E. 31-1. Amendment would be futile; the Court will not permit the Association to file the proposed amended counterclaim because Counts 6 and 7 would still fail as a matter of law.[6] *See Domond v. Peoplenetwork APS*, No. 16-24026-CIV, 2017 WL 5642450, at *4 (S.D. Fla. June 16, 2017).

Counts 6 and 7 fail as a matter of law because the Association has failed to plead the requisite elements of trademark infringement that are required under both the Lanham Act and common law, instead relying on conclusory recitations of the elements of their claims. As explained *supra*, to establish a prima facie case for false designation of origin under 15 U.S.C. § 1125(a), "a plaintiff must show (1) that the plaintiff had enforceable . . . rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." *Crystal Entm't & Filmworks, Inc.*, 643 F.3d at 1321. The test for common law trademark

---

[6] The Court has considered the sufficiency of the proposed amended counterclaim. D.E. 31-1. The proposed amended counterclaim fails to state a claim because it does not sufficiently allege that the Association owns a valid and enforceable trademark; as such, amendment would be futile because the proposed amended counterclaim would be dismissed with prejudice. *See* Fed. R. Civ. P. 15(a)(1) (the court is only obligated to give a party one opportunity to amend its pleading).

infringement is the same as for federal trademark infringement under 15 U.S.C. § 1125(a). *See Florida Int'l Univ. Bd. of Trustees*, 91 F. Supp. 3d at 1288 (S.D. Fla. 2015).

To satisfy the first element, the Association must allege that it (1) established rights to the 1 HOMES logo prior to SH Group, and (2) owns a valid and protectable trademark. *See Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1133 (11th Cir. 2018); *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Since the Association seeks to amend its Counterclaim to allege that its use of the 1 HOMES logo predates SH Group's use of the logo, the Court will focus on the second prong—whether the Association sufficiently pleads that it has a valid and protectable trademark. *Leigh*, 212 F.3d at 1216. It does not. To be protected under 15 U.S.C. § 1125(a), a trademark need not be registered, but it must be inherently distinctive (in the case of a suggestive, arbitrary, or fanciful mark) or have acquired distinctiveness (in the case of a descriptive mark). *See Tana v. Dantanna's*, 611 F.3d 767, 773–74 (11th Cir. 2010). The 1 HOMES logo falls into the descriptive mark category of distinctiveness. *See id.* (descriptive marks are those that identify a product or service, as opposed to generic marks that "suggest the basic nature of the product or service" and are not entitled to trademark protection, suggestive marks that "suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive," or arbitrary or fanciful marks that "bear no relationship to the product or service"); *see also* Counterclaim ¶¶ 46–51 (stating that SH Group's marks are "merely descriptive"). As such, to establish acquired distinctiveness, *i.e.*, "secondary meaning," a plaintiff must show that in the minds of the relevant consuming public, the "primary significance of the term . . . is not the product but the producer." *Am. Television & Commc'ns Corp. v. Am. Commc'ns & Television, Inc.*, 810 F.2d 1546, 1549 (11th Cir. 1987) (citations omitted). In assessing secondary meaning, courts consider "(1) the length and manner of [the mark's] use; (2)

the nature and extent of advertising and promotion; (3) the efforts made by the [proprietor] to promote a conscious connection in the public's mind between the [mark] and the [proprietor's] product or business; and (4) the extent to which the public actually identifies the [mark] with the [proprietor's] product or venture." *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F.3d 776, 785 (11th Cir. 2020) (quoting *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984)).

Here, the Counterclaim contains no allegations as to either inherent or acquired distinctiveness of the 1 HOMES logo. In the Association's opposition to the Motion, it relies on only two threadbare allegations concerning its use of the 1 HOMES logo, neither of which supports secondary meaning. D.E. 31 at 6. First, the Association refers to its pending trademark applications and the related allegation that it "has used the mark in commerce in connection with such services since at least as early as December 31, 2018." *Id.* (quoting Counterclaim ¶ 10). Second, the Association points to its allegation that "the Association's 1 HOMES mark is protected as a common law trademark due to the Association's extended use of the mark in commerce." *Id.* (quoting Counterclaim ¶ 24). Neither allegation meets *Iqbal*'s pleading standard. In addition, the Association wholly fails to allege how the public would identify the 1 HOMES logo with the Association rather than with SH Group/ 1 HOTEL and/or 1 HOTEL AND HOMES, *Royal Palm Props.*, 950 F.3d at 785, or how the "primary significance" of 1 HOMES would be attributable to the Association rather than to SH Group/ 1 HOTEL and/or 1 HOTEL AND HOMES, *Am. Television & Commc'ns Corp.*, 810 F.2d at 1549. Nor does the Counterclaim allege how the Association attempted to "promote a conscious connection in the public's mind" between the 1

HOMES logo and the Association. *Royal Palm Props.*, 950 F.3d at 785. Counts 6 and 7 are dismissed.[7]

**IV.**   **Conclusion**

It is hereby

ORDERED AND ADJUDGED that the Defendants' Motion, D.E. 22, is GRANTED IN PART. Count 3 (tortious interference) and Count 6 (Florida trademark infringement) of the Complaint are DISMISSED WITH PREJUDICE. Defendants SHALL file their amended answer to the Complaint with respect to the counts against Bostany by **Monday, December 21, 2020**. It is further

ORDERED AND ADJUDGED that SH Group's Motion, D.E. 29, is GRANTED. Count 6 (false designation of origin) and Count 7 (common law trademark infringement) of the Counterclaim are DISMISSED WITH PREJUDICE. SH Group SHALL file its answer to the remaining counts in the Counterclaim by **Monday, December 21, 2020.**

**EXTENSIONS OF TIME TO FILE RESPONSIVE PLEADINGS WILL NOT BE PERMITTED.**

DONE AND ORDERED in Chambers at Miami, Florida, this _7th__ day of December, 2020.

---

[7] Because the Association fails to allege facts sufficient to establish that it owns a valid and protected trademark, the Court need not consider the second element of a trademark infringement claim (likelihood of confusion). The Court notes that while the proposed amended counterclaim might sufficiently plead likelihood of confusion by including allegations about when and how SH Group used the 1 HOMES logo, these allegations are not enough to defeat the fact that the Association has failed to plead  sufficient facts that, if proven to be true, would establish that it owns a valid and protected trademark.

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

Copies furnished:
All counsel of record